THE WARREN MANUFACTURING COMPANY OF BALTI-MORE COUNTY *vs.* WILLIAM H. HOFFMAN.

*Construction of Words in a Lease—Instruction—Practice.*

A lease conveyed so much land as was at the time covered by the waters of the Gunpowder Falls, by the backing or damming the stream by the dam then erected, or as might or should be requisite and necessary to be covered by the backing or damming of such stream, according to the terms employed, "so as to make the fall thereof *at least* twelve feet at common water mark," at the point designated; "and the right and benefit of the water to the extent aforesaid, and of damming and pooling the same in manner aforesaid." HELD:

That the words "at least" should be read with the context as intended to mean the same thing as "at most" or "not to exceed," twelve feet.

Where a party gets the benefit of all the law to which he is entitled, he cannot complain that he does not get it stated in his own terms.

APPEAL from the Circuit Court for Baltimore County.

The appellant and appellee are owners of adjoining mill property situated upon the Gunpowder river in Baltimore County. The appellant has a cotton factory upon its property which it operates in the manufacture of cotton goods. The appellee has a paper mill upon his property, and is, and for many years has been, engaged in the manufacture of paper therein. The property of both parties formerly belonged to one Charles Jessop, who by deed dated the 5th of March, 1814, conveyed the property owned by the appellant, to a certain George Harryman, who by deed dated the 8th of September, 1814, conveyed the same to one John Harryman, who on the 10th of September, 1814, leased it for nine hundred and ninety-nine years to a certain Samuel Smith and others. The appellant's title to the property in its possession, was derived from the said Samuel Smith and his assigns, by virtue of several *mesne* conveyances; and also by one other deed from Charles Jessop to said Smith, dated the 10th of October, 1816. The appellee acquired his property lying upon the said stream above the property of the appellant, by proper conveyance in 1850. This action was brought by the appellee on the 20th of January, 1883, against the appellant for alleged illegal and wrongful raising of its mill dam, whereby the waters of the Gunpowder river were forced back upon the property of the plaintiff to his loss and damage.

*Exception.*—The plaintiff asked the following instruction:

That if the jury are satisfied from the evidence, that at the time of the institution of this suit, the plaintiff was, and for three years prior thereto had been, the owner of the property spoken of in the evidence as the "Marble Vale Mill," and engaged in the manufacture of paper at that place, and also the owner of the land on both sides of the Gunpowder River, below said mill, down to

the property of the defendant, which is situated on said river, between one and two miles below said "Marble Vale Mill," if they shall believe from the evidence that it is so situated; and shall further believe, that at and during the said time, the defendant owned and managed the " Warren Factory," and the dam appurtenant thereto, which has been spoken of in the evidence, and shall further believe, that in the management of its said factory and dam, the defendant raised said dam above the height at which the same was limited and fixed by the deed of the 10th of October, 1816, which has been given in evidence, and that thereby the waters of said Gunpowder River were forced back upon the property of the plaintiff, and that by such forcing back of the water or back-water, the plaintiff sustained loss or damage, and such injury and backing of the water by the defendant upon the property of the plaintiff, continued till the time of the institution of this suit, then the plaintiff is entitled to recover, and their verdict will be for the plaintiff for such sum as they believe from the evidence is the amount of damage sustained by him from such unlawful raising of said Warren dam, for three years, prior to the 20th day of January, 1883, and up to that date.

The defendant excepted to the plaintiff's prayer because it submitted to the jury a question of law, to wit, the construction of the indenture of the 10th of October, 1816.

The defendant prayed the Court to instruct the jury as follows:

1. That before they can find for the plaintiff, they must believe from the evidence :

1st. That within three years next preceding the institution of this suit, the defendant's dam exceeded twelve feet in height at common water mark, at a point where the rock-stone mentioned in the indenture of the 10th of October, 1816, formerly stood ; and—

2nd. That during said period, water was backed upon the property of the plaintiff, in consequence of the defendant's dam exceeding said height of twelve feet.

2. That there can be no recovery by the plaintiff in this case, if the jury believe from the evidence that at no time since the 20th of January, 1880, has the defendant's dam exceeded twelve feet in height at common water mark at a point where the rock-stone mentioned in the indenture of the 10th of October, 1816, formerly stood.

3. That if the jury believe from the evidence, that before the institution of this suit, the plaintiff, or his agent, authorized in this behalf, agreed with the defendant, that if the defendant would remove from the dam the log spoken of by the witness, Summerfield Baldwin, the plaintiff would be perfectly satisfied, and that the whole controversy would be ended, and that the said log was accordingly removed, and has not since been restored, then the plaintiff is not entitled to recover.

4. That the Court exclude from the jury the testimony of the witnesses, George Hoffman and John B. Brown so far as the same relates to an alleged interview on the 31st of August, 1880, with the witness, Samuel H. Green.

To the defendant's third prayer, the plaintiff objected for the reason, amongst others, that there was no evidence in the case upon which the same could be properly founded or to support it, and 2nd, because there is no evidence in the case legally sufficient to base the same upon.

The Court (FOWLER, J.) thereupon granted the plaintiff's prayer with the following modification:

The Court further instructs the jury, in connection with the plaintiff's prayer, that the true intent and meaning of the deed of the 10th of October, 1816, mentioned ·in said prayer, is to convey to the grantees therein named, the right to maintain the mill-dam at Warren Factory at the same height at which it stood at the date of said deed, or at such additional height, if necessary, as should be requi-

site or necessary, so as to make the fall thereof at least twelve feet at common water mark at the rock-stone in the middle of the falls, as mentioned and described in said deed of the 10th of October, 1816.

The Court rejected the first and second prayers of the defendant, but granted its third and fourth prayers ; to the granting of the plaintiff's prayer, and the modification thereof, and to the rejection of the defendant's first and second prayers, the defendant excepted.

The jury rendered a verdict for $2,000 for the plaintiff, and judgment was entered accordingly. The defendant appealed.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, RITCHIE, and BRYAN, J.

*R. W. Baldwin*, and *John Prentiss Poe*, for the appellant.

*Henry Stockbridge*, and *I. Nevett Steele*, for the appellee.

ALVEY, C. J. delivered the opinion of the Court.

We discover nothing in the rulings of the Court below that requires this Court to reverse the judgment. The question here is, whether the Court below committed error in granting the prayer of the plaintiff, with the modification added, and in rejecting the first and second prayers offered by the defendants. We think there was no error committed in this respect, of which the defendants can complain.

The whole controversy turns upon the fact, whether the defendants had wrongfully and in violation of the grant by Charles Jessop, of the 10th of October, 1816, raised the breast of their milldam, so as to back the water upon the mill of the plaintiff above that of the defendants.

By the lease from John Harryman to Samuel Smith and others, under whom the defendants claim, there was an assurance or covenant by the lessor, that there was then, and should forever remain, for the use and benefit of the lessees, and their assigns, and as appurtenant to the land demised, "a fall of at least eleven feet at common water mark, at the rock stone in the middle of the falls aforesaid," where a dam was then in course of erection; and that the lessees should "forever have the right and privilege of damming and pooling the water at the aforesaid rock, thereby covering so much land on both sides of the said falls as may be necessary and sufficient to secure an uninterrupted fall from above, down to that place, of *at least* eleven feet as aforesaid."

By the subsequent lease from Charles Jessop (under whom the plaintiff claims) to Smith and others, of the 10th of October, 1816, it was manifestly intended to grant and confirm to the lessees an extension of the water power previously acquired by them; but, at the same time, it is quite clear, that it was intended that there should be a limit to the power thus granted. The terms employed, it is true, are inapt and quite inappropriate to define the limits of the power granted; but there can be no doubt, upon the whole context of the instrument, as to what was the real meaning and intention of the parties. The lease was of so much land as was at the time covered by the waters of the Gunpowder Falls, by the backing or damming the stream by the dam then erected, or as might or should be requisite and necessary to be covered by the backing or damming such stream, according to the terms employed, "so as to make the fall thereof *at least* twelve feet at common water mark," at the point designated; "and the right and benefit of the water *to the extent aforesaid,* and of damming and pooling the same in manner aforesaid." That the terms "at least" should be read with the context as intended to mean the same thing as "at most," or "not to exceed," twelve feet, we think is

clear; and that appears to have been the invariable understanding of all the parties concerned, from the date of the lease to the present time. A literal reading of the clause would grant the power to raise the dam to any extent that the defendants might deem proper, and without any limit whatever ;—a power manifestly that was never intended to be conferred, and for which we do not understand the counsel for the defendants to contend. Indeed, the prayers offered by the defendants, and rejected by the Court, concede that there was no warrant or authority for raising the dam above the height of twelve feet.

The prayer of the plaintiff, as modified and granted by the Court, would seem to have fully presented the law of the case, and in a form to which the defendants could not rightfully object. For while the construction placed on the lease of the 10th of October, 1816, may not have been technically accurate, yet the instruction as given to the jury was in form most advantageous to the defendants. By that instruction the jury were informed that the defendants could maintain their dam at the same height at which it stood at the date of the lease from Charles Jessop, though that might exceed twelve feet; and if the dam was not of the height of twelve feet at that date, then the defendants had the right to raise it so as to make the fall thereof *at least* twelve feet at common water mark at the rock stone, &c. This was certainly as favorable to the defendants as they could possibly desire it to be, if not something more than they had a right to ask of the Court. The first and second prayers offered by the defendants were based upon the alleged fact that the dam did not exceed the height of twelve feet; and as that proposition, in a more favorable form to the defendants, was distinctly submitted to the jury in the prayer of the plaintiff, as modified by the Court, the defendants have no ground to complain that their prayers were rejected. By such rejection they could suffer no prejudice, though the prayers

---

may have been strictly correct in themselves; for it is well settled that where a party gets the benefit of all the law to which he is entitled, he cannot complain that he does not get it stated in his own terms.

It follows that the judgment must be affirmed.

*Judgment affirmed.*

