JOHN GREER *vs.* THE ARLINGTON MILLS MANUFACTURING COMPANY, a Corporation of the State of Delaware.

*Assumpsit—Term of Service—Hiring for a Year—Hiring for Indefinite Period—Interpretation of Contract—Peremptory Instruction of Jury—Set Off—Expenses Incurred for Defendant.*

1. A hiring at a certain sum a year, no time being specified, and unaccompanied by any facts or circumstances in proof from which a different intent may be inferred, and when the testimony as to the contract is not conflicting, is an employment for an indefinite period and not for a year, and is determinable at any time at the option of either party thereto.

2. Such is held to be the legal meaning and effect of the following : "The agreement was that I was to receive $5000.00 a year for my services as manager of The Arlington Mills Manufacturing Company;" and the jury instructed that they could not find for the plaintiff for any salary after date of his discharge.

3. The effect of the plea of set off is that the plaintiff cannot recover at all if at the time of suit he was indebted to the defendant in a sum as great as the amount he claims from the defendant. But the statute of set off is expressly limited to " mutual debts between the parties to the action," due in the same right. The plain meaning of this phrase is that a debt due from A. alone shall discharge only a debt due to A. alone ; or that a debt of one character, *i. e.*, whether several or joint, individual or representative, shall discharge a debt of like character, and no other. Thus a joint debt cannot be set off against a several or individual one.

4. In order that plaintiff may recover for expenses incurred for defendant, he must establish the fact that such expenses were incurred by the authority or consent of the defendant.

(*March 10, 1899.*)

PENNEWILL and BOYCE, J. J., sitting.

*Robert G. Harman* and *Horace Greeley Knowles* for plaintiff.

*Levi C. Bird* and *Andrew E. Sanborn* for defendant.

Superior Court, New Castle County, February Term, 1899.

ACTION on the case (Nos. 136 and 137—consolidated—February Term, 1898). See facts in the charge of court.

PENNEWILL, J., charging the jury :

Gentlemen of the jury :—John Greer, the plaintiff in this suit, alleges that he entered into a contract or agreement with the Arlington Mills Manufacturing Company, the defendant, on March 17, 1886, under which he was to receive $5000.00 a year for his services as manager of said Arlington Mills Manufacturing Company, and that in pursuance of said contract, he, the plaintiff, did act as said manager from March 17, 1886, up to about the last of the year, in December, 1896, at which time he was discharged by the defendant without any sufficient cause and without any fault on his part. He contends that the original hiring in 1886 was a hiring for a period of one year, and having continued to render the same service after the first year, it became therefore a hiring from year to year, subject to the same terms and conditions as in the contract of the first year. He insists, therefore, that having been discharged in December, 1896, when the year of employment would not have expired until March 17, 1897, and for no fault of his, he is entitled in law to recover in this action the proportion of the salary for a year which the time from the date of discharge till March 17, 1897, bears to the whole year, to wit, about one-quarter of a year's salary. This is his claim for salary. He also claims that on March 22, 1892, the defendant agreed to give him 2½ per cent. of the net profits of the business of the Arlington Mills Manufacturing Company, in addition to the salary mentioned in the original contract, but concedes that the only year in which there were any such net profits that could be recovered in this action was the year 1893. He also alleges that there is due and owing to him from the defendant the further sum of $42.50 for services rendered between the date of discharge and the 17th day of March, 1897.

The defendant, on the other hand, avers that the plaintiff together with his brother Joseph Greer, was employed to manage the business of the mills in consideration of the sum of $5000.00 per annum, beginning on the 19th day of March, 1886 ; but denies that such hiring was for the period of one year. It insists that such hiring was for an indefinite period, and claims that the

defendant had the right at any time to terminate the agreement without assigning any reason or cause therefor. The defendant therefore contends that the plaintiff has no right to recover any salary for the time intervening between the date of discharge and the 17th of March, 1897, and asks the court to so instruct you. This request or prayer makes it necessary for us to consider and determine the question whether the contract relied on by the plaintiff for his claim of salary was a contract for a year, or only a contract at a fixed salary for an indefinite period and subject to be terminated at any time at the option of either of the parties thereto. This is a very important question in this case and we have considered it as fully and carefully as we were able to do. We do not find that this question has ever been distinctly passed upon by any court in this state. It is, so far as we are able to tell, a new question here, although frequently judicially considered in England, and in some of the states of our own country. And such a contract of hiring as the one before us has been quite uniformly held in England to import a hiring for a year, although the rule has not been inflexible even there, where originally the question generally arose not between master and servant, but in settlement cases. In this country, however, the contrary doctrine seems to prevail, although some decisions have followed the English rule. But it will be found upon examination, we think, that such authorities are for the most part either based almost, if not entirely, upon English text books and decisions, or upon some particular facts or circumstances surrounding the parties and the transaction in the particular case, indicating the intention of the parties. For example, Story in his work on *Master and Servant, Sec. 952 c.*, says : " When there is a general hiring and nothing is said as to its duration, and no stipulation as to payments being made which may govern its interpretation, the contract is understood to be for a year, and the reason for this rule is said to be that both master and servant may have the benefit of all the seasons. This rule applies to the hiring of all menial, household and trade servants, reporters of newspapers, servants in husbandry, &c.—" Every authority cited by Story to sustain the text is an English

case, and not one in this country is mentioned. Wood, in his *Law of Master and Servant, Sec. 134,* very clearly states the difference between the rule which obtains in this country and the one in England, and I can find it nowhere more intelligently and satisfactorily stated. It is as follows :

" In England it is held that a general hiring, or a hiring by the terms of which no time is fixed, is a hiring for a year, and that the rule applies to all contracts of hiring and service, whether of domestic or other servants, of whatever class or grade, and this rule is regarded as applying in all cases, except where there is some custom relating to the matter in reference to which the parties are presumed to have contracted, or where the terms of the contract, or the nature of the service is such as to rebut the presumption that a yearly hiring was intended. But according to the English decisions upon the subject, a general hiring is merely presumed to be a hiring for a year, and may be rebutted by proof, or even by other presumptions raised by circumstances surrounding the transactions that tend to rebut any such presumption." *    *    *    *    *    *    *    *    *    *

" I have referred to this rule of the English courts and its peculiarities, not because it has any applicability to the law upon these questions as administered by our courts, but because English cases upon this question are frequently cited by lawyers as applicable upon similar questions in our own courts ; but I am aware of no instance in which, for many years, the rule has been approved by any American court. It must be remembered that these questions, in England, generally arise, not between the master and servant, but in settlement cases, where it is sought to charge a pauper upon a community by showing that he acquired a settlement there by having been hired to serve, and having actually served under a contract for a yearly hiring, one year.

With us the rule is inflexible, that a general or indefinite hiring is *prima facie* a hiring at will, and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed

for whatever time the party may serve. It is competent for either party to show what the mutual understanding of the parties was in reference to the matter; but unless their understanding was mutual that the service was to extend for certain fixed and definite period, it is an indefinite hiring and is determinable at the will of either party, and in this respect there is no distinction between domestic and other servants." *   *   *

"But a contract to pay one $800 a year for services is not a contract for a year, but a contract to pay at the rate of $800 a year for services actually rendered, and is determinable at will by either party. Thus it will be seen that the fact that the compensation is measured at so much a day, month or year, does not necessarily make such hiring a hiring for a day, month or year, but that in all such cases the contract may be put an end to by either party at any time, unless the time is fixed, and a recovery had at the rate fixed, for the services actually rendered."

In the case of *Martin vs. Insurance Company, 42 N. E. Rep., 416, and 148 N. Y., 117*, in the Court of Appeals, and which seems to be the leading case on the subject in this country, it appears that the plaintiff entered the employ of the defendant in 1881, and was placed in charge of the real estate department at a salary of $5000 a year. From the first of January, 1883, he received salary at the rate of $6500 a year under an arrangement made in February, 1883. In February, 1884, the salary was increased to the rate of $10,000, payable from January 1st, 1884. Salary was paid monthly. Without further agreement of any kind plaintiff continued in the discharge of his duties until April 13, 1892, when he received a letter from the president of the defendant, notifying him that his services would not be needed after April 30, 1892. Plaintiff replied to this letter April 14, 1892, stating that he accepted the defendant's ultimatum. A week later he wrote a second letter in which he sought to explain the first one as follows, viz: "What I meant then and what I mean now is, that while I concede your power to dispense with my services after April 30th, I do not concede your power to break my contract with the company without making the company liable to me. I wish you to distinctly understand that my

employment is, and has been since January 1, 1884, a yearly one, at a salary of $10,000 per year, commencing on January first, and that I am entitled to my salary for the balance of the year." The court, Bartlett, J., delivering the unanimous opinion of the court, after stating the facts as above, said : '' The letter of the defendant was an absolute discharge of the plaintiff and cannot be regarded as a part of the negotiation to abrogate an existing contract ; the plaintiff's replies to that letter did not in any way affect the legal rights of the parties in this aspect of the case. The two questions presented by this appeal are, does the evidence establish a contract of hiring by the year, and if not does a general hiring import an employment by the year? We do not think the plaintiff proved an original contract whereby he was employed to render service for a year ; nor was the evidence so conflicting on this point as to have warranted the trial judge in submitting the question to the jury. A verdict finding that such a contract was entered into by the parties would be set aside as unsupported by the evidence.''

The learned judge quoted with approval, the section of *Wood on Law of Master and Servant* above given, and concluded by saying : '' It follows, therefore, that the hiring of this plaintiff was a hiring at will, and the defendant was at liberty to terminate the same at any time.''

In the case of *McCullough Iron Co. vs. Carpenter, 67 Md.*, 555, in the Court of Appeals, Irving, J., delivering the unanimous opinion of the court, said : '' By the first prayer the court was asked to say that ' there is no evidence in this case legally sufficient to entitle the plaintiff to recover.' This prayer assumes the truth of all the evidence offered by the plaintiff and asks the court to say ' that in law the evidence is insufficient to support the plaintiff's action.' The plaintiff testified that for twenty-seven years he had been in the employment of the defendant in its rolling mill, during which time he had been paid part of the time by the day, part of the time by the ton, and the balance of the time by the year ; and that the change in his pay began the first of April, 1882. At that time he was appointed assistant manager at $1000 per year, payable in monthly installments, and

that under this contract he worked until the first of September, 1886, when he was discharged.   He said he also got a house worth six dollars and a half per month, a cow kept free, and coal at cost.''

After referring to the testimony of another witness from which it appeared that the defendant had virtually admitted that the plaintiff was hired for a year, the court continued: '' There can be no doubt that, in this country, the rule is, an indefinite hiring is *prima facie* a hiring at will.   It is also well settled that a hiring at so much a week, month or year, no time being specified, does not of itself make more than an indefinite hiring.   It is competent for the parties to show what the mutual understanding was, but unless there was a mutual understanding, it was only an indefinite hiring.

By the second instruction asked by appellant the jury was told that the burden was on the plaintiff to satisfy them that he was employed by the defendant for one year, as the rule laid down in the authorities requires.   Now, under the law as we understand it to be, if the plaintiff's case rested solely upon his own testimony, there would seem to be no escape from instructing the jury, there was no legally sufficient evidence of a contract for a yearly hiring.   But the plaintiff's testimony is supplemented by the testimony of another which showed an admission of the defendant that the plaintiff was hired for a year.''

In the case of *Edwards vs. Seaboard R. R. Co., Supreme Court of N. Carolina, 28 S. E. Rep., 137,* in which the plaintiff was appointed general storekeeper for the defendant, to take effect at a certain time, and the salary to be $1800 a year, the court said : '' The contract before us is not specific as to the term of service.   The plaintiff does not so insist, but says a reasonable construction thereof leads to the conclusion that the parties intended a one year term of service.   We are not able to see that such was the intention.   It seems reasonable that if they had so intended, they would have expressed themselves more definitely and in more explicit terms in so important a feature of their agreement.   Why they were not more definite we cannot tell.   They may or may not have had reasons for leaving the writing

as it is, or they may not have called their minds to that feature of the contract. It does not seem unreasonable that the parties intended that the service should be performed for a price that should aggregate the gross sum annually, leaving the parties to sever their relations at will, for their own convenience. All business men know they can make legal contracts to suit themselves; also the importance of saying what they mean, in business matters, in plain and definite terms. As the case shows that the plaintiff had been paid for all services rendered, and he offered no other evidence, we hold that he cannot recover in this action."

In the case of *Booth vs. National India Rubber Co., 36 Atl., 714,* in the Supreme Court of Rhode Island, the court held the hiring to be a hiring for an indefinite period, and that such a hiring, according to the American rule would be a hiring at will, and consequently might be terminated at any time by either party. In the case of *Louisville & N. R. Co. vs. Offutt, 36 S. W. Rep., 181,* the court used the following language : "The well settled rule with reference to the character of hiring is, that when the term of service is left discretionary with either party, or when it is not definite as to time—in either event either party has the right to terminate it at any time, and no cause therefor need be alleged or proved."

It seems to us unnecessary to do more than cite other cases to the same effect, without quoting therefrom : *De Brear vs. Mintum, 1 Cal., 450; Prentiss vs. Ledyard, 28 Wis., 131; Copp vs. Colorado Coal & Iron Co., 46 N. Y., Supplement 542; Kirk vs. Artaan Co., 63 Pa. St., 105 (Supreme Court).*

There have been some American cases cited by the plaintiff, which seem to maintain a different principle from that so strongly affirmed and clearly recognized in the authorities above mentioned, but we think upon careful examination they will be found to be earlier cases founded on English authority, or distinguished from the cases we have considered by certain facts and circumstances from which it could be fairly and reasonably inferred that it was the intention of the parties to the contract that the service should be for a year and not for an indefinite period.

CHARGE OF COURT.

In the case of *Bassom vs. Scilletto, 37 Ohio State,* cited by the plaintiff, it appeared from the testimony that the plaintiff had stated to the defendant that he desired his employment to be made more permanent, and that upon this statement an agreement was made to pay the plaintiff $1100 a year. The court held that upon that testimony the jury might infer that the contract was for a year. There was a desire for more permanence as to salary shown by the proof, and understood by both parties.

In the case of *Tatterman vs. Suffolk Mfg. Co., 106 Mass., 56,* also cited by the plaintiff, the court said, "the first and second prayers were rightly refused for the reason that they called upon the court to rule upon the legal effect of a part only of the whole evidence from which the contract was to be deduced. The legal effect was dependent upon other facts and circumstances in proof." It thus appears that in that case there were other facts and circumstances in proof from which the legal effect of the contract might be deduced.

The case in *52 Barb., 564,* if in conflict with the leading case of *Martin vs. Insurance Co.,* above considered, it is sufficient to say that the former case is overruled by the latter, which was decided as late as 1895 by the N. Y. Court of Appeals.

It is true that in the State of California a law has been passed which provides that, "A servant is presumed to have been hired for such length of time as the parties adopt for the estimation of wages. A hiring at a yearly rate is presumed to be for one year." But evidently the reason for the enactment is found in the fact that the contrary rule and presumption was so well established and recognized by the courts that it required an act by the legislature to change it.

We have no doubt that the great preponderance of the best considered cases in this country recognize and affirm the rule laid down by Wood in his work on Master and Servant, and which he terms the American rule, and we therefore hold that a hiring at a certain sum a year, no time being specified, unaccompanied by any facts or circumstances in proof from which a different intention may be inferred, and when the testimony as to the contract is not conflicting, is an employment for an indefinite

term and not for a year. Such, according to the testimony of the plaintiff himself, was the contract with which we are now dealing. He testified as follows : " The agreement was that I was to receive $5000 for my services as manager of the Arlington Mills Manufacturing Company." There was no other witness for the plaintiff, and so far as we are able to see there is absolutely nothing in his testimony, or in the testimony of any witness for the defendant, or in any of the evidence adduced in the case that tends to show any intention of the parties that the agreement should be considered as a hiring for a year. There is no conflict whatever in the evidence as to the term of service or the contract itself. There is no fact or circumstance shown by the proof, from which it would appear that the contract as stated by the plaintiff imported anything different respecting the term of service from the legal meaning and interpretation of the agreement itself. As was said by the court in the Maryland case above mentioned, and in *Wood on Master and Servant*, " it is competent for the parties to show what the mutual understanding was, but unless there was a mutual understanding, it is only an indefinite hiring." But the plaintiff said nothing in his testimony as to the understanding of the parties, and two other witnesses testified, and it was not denied by the plaintiff, that there was no understanding whatever that the hiring should be for a year. True, it did appear from the evidence that the plaintiff was sometimes paid in advance, but there was no agreement to pay him in advance, and surely the fact of such voluntary payment could not be regarded as a circumstance showing any intention of the parties that what would otherwise be an indefinite employment should be considered one for a year. It is also true that in January, 1892, the plaintiff asked for an increase in wages, and the defendant agreed to give him in addition to his salary 2½ per cent. of the net profits of the business, but this cannot be regarded as anything other than an increase of compensation for his services, and would cease whenever he or the defendant saw fit to terminate the employment. The defendant terminated such employment in December, 1896, as it had a right to do under the contract existing between them, which was an

indefinite hiring and for no fixed period ; and having been paid, as the plaintiff admits, his salary up to the time of his discharge, we instruct you that he is not entitled in this action to recover any sum for salary.

This instruction we say to you, relates only to the item of salary, and to no other part of the plaintiff's claim in this suit.

But the plaintiff in addition to the salary, concerning which we have instructed you, also claims certain commissions or net profits, as above stated ; but he agrees that there are no such profits which he can recover in this action except for the year 1895. By this admission on his part, you are limited in your inquiry to that one year so far as the net profits are concerned. The plaintiff, we will say, would be entitled to recover such sum as you shall find from the evidence was due to him under the agreement, from the net profits of the mill during the year 1895, provided he is not prevented from recovering such sum by reason of the plea of set off which the defendant has filed in this case. The effect of this plea of set off is, that the plaintiff cannot recover at all, if at the time of entering the suit, November 10, 1897, he was indebted to the defendant in a sum equal to the amount he claims from the defendant. But we will say to you that in order that this plea shall be effective and defeat the recovery by the plaintiff, it must be shown by the defendant, and you must be satisfied from the evidence, not only that such sum was due and owing to the defendant at the time this action was brought, but that it was due and owing from the plaintiff alone and individually and not from John Greer and Company, that is, from this plaintiff and some one else. Our statute of off set, *Rev. Code, page 793, Sec. 21*, provides that, '' Mutual debts between parties to an action, due at the time of action brought, in the same right, and being for a sum liquidated, or which can be ascertained by calculation, may be the subject of set off in such action.'' The statute is expressly limited to '' mutual debts between the parties to an action '' due in the same right. The plain meaning of this phrase, '' due in the same right,'' said the Chancellor in the case of *Wingate vs. Parsons*, '' is that a debt due from A. alone shall discharge only a debt due to A. alone.

Or that a debt of one character, *i. e.*, whether several or joint, individual or representative, shall discharge a debt of the like character and no other. Thus a joint debt cannot be set off against a several or individual one."

*Wingate vs. Parsons, et al Exrs., 4 Del. Chancery, 122; Shreve's Admr. vs. Wells & Sappington, 2 Houst., 233.*

Of course, if you are satisfied from the evidence that the plaintiff agreed with the defendant that the claim of the defendant should be set off against the claim of the plaintiff, that is, that the plaintiff's share of the net profits of the mill should be applied towards the payment of a claim held by the defendant, then the plaintiff would be bound by his agreement and could not recover any sum for net profits. But you must be satisfied from the evidence that the plaintiff agreed to such a proposition before he could be so prevented from recovering the net profits.

The plaintiff also claims the sum of $42.50 for expenses which he alleges he incurred for the defendant between the date of discharge and the seventeenth day of March, 1897. In regard to this claim we instruct you that it is incumbent on the plaintiff to satisfy you by the evidence that such expenses were incurred with the authority or consent of the defendant. All that we have said to you respecting the plea of set off in connection with plaintiff's claim for net profits, you will also consider in connection with this claim for expenses.

Verdict for defendant.