# Miller, Appellant, *v.* Rodd.

*Contracts—Construction—Salary—Negotiations leading to contract—Words and phrases—"Not less than"—Corporations.*

1. The omission of words used, or the transposition of them, in a contract, as a result of which the meaning is altered, cannot be permitted, unless necessary to carry out some plainly manifested intent.

2. All words must be construed in connection with the context, to determine the intent of the parties, and, where a relative term or phrase is used, the effect of it must be found by the court from a consideration of the writing as a whole.

3. Parties may, by appropriate words, indicate that a certain thing shall or shall not be done at a fixed time, and not before.

4. Where an agreement names certain sums to be temporarily paid for the services rendered by two officers of a corporation, and reads "provided, however, that the said amounts shall be adjusted not less than every two years from date, and revised as the services rendered by each of the parties would indicate," the agreement means that the salaries may be altered whenever the contingencies contemplated arose, making such changes proper, and this might be done at any period, but must take place at least within two years; it does not mean that the adjustment provided could not be had until the full time named had expired.

5. Where a contract provides for a salary at a fixed sum "per annum," this does not necessarily mean an employment from year to year. The presumption, in such case, is a hiring for an indefinite term, and in the absence of definite expressions showing the contrary to have been in mind it will be so held.

Argued October 8, 1925. Appeal, No. 151, March T., 1925, by plaintiff, from order of C. P. Allegheny Co., Jan. T., 1924, No. 869, refusing to take off nonsuit, in case of Torrence Miller v. Thomas Rodd, Jr. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Assumpsit on contract. Before CARPENTER, J.

The opinion of the Supreme Court states the facts.

Nonsuit; refusal to take off. Plaintiff appealed.

*Error assigned* was, inter alia, order, quoting record.

*William M. Hall,* with him *Alexander H. Hunter,* for appellant.—The construction which the court has placed on the contract would be correct if the language used were "shall be adjusted at least every two years from date," or "shall be adjusted less than every two years from date." In other words, the construction given by the court does not give any weight to the word "not." The court's construction will make it necessary to interpolate the word "once" into the contract—"once every two years."

The words of a contract are to be taken most strongly against the party who drew the contract: Advance Co. v. Eagle Co., 267 Pa. 15; Duncan v. Fruit Growers Assn., 282 Pa. 498.

Evidence to explain the subject-matter of an agreement is essentially different from that which varies the terms in which the contract is conceived: Barnhart v. Riddle, 29 Pa. 92; Century Church v. Clime, 116 Pa. 146; Perry v. Payne, 217 Pa. 252; Douthett v. Gas Co., 202 Pa. 416; Meigs v. Lewis, 164 Pa. 597; Phila. Life Ins. Co. v. Ins. Co., 23 Pa. 65.

*Wm. S. Moorhead,* of *Moorhead & Knox,* with him *M. H. Ewing,* for appellee.—Whether the offer covered the attending circumstances or prior negotiations, however, such testimony would only be admissible on the allegation and proof of fraud, accident, or mistake in the drawing of the contract or ambiguity in its meaning: Wodock v. Robinson, 148 Pa. 503; Litle v. Henderson, 2 Yeates 295; Fisher v. Deibert, 54 Pa. 460; Eustis Mining Co. v. Baer, Sondheimer & Co., 239 Fed. 976.

There has been no tender of the certificates of stock.

Where a contract provides the rights, liabilities, and remedies of the parties upon a breach thereof, their rights and remedies are confined by and their liabilities

are limited to those stipulated in the contract: Bradley v. R. R., 36 Pa. 141.

OPINION BY MR. JUSTICE SADLER, November 23, 1925:

Defendant, the owner of a large part of the capital stock of the Rodd Company, agreed, on March 1, 1922, to sell a portion thereof to the present plaintiff, stipulating that he should have the right before others to repurchase, if so desired, in case the buyer, Miller, left the service of the concern because of any "infringement of rights" which he might acquire by reason of the contract. Rodd promised to secure his election as an officer at a salary named, subject to future adjustment based on the value of services rendered. Initially, the president was to receive $8,000, and the secretary-treasurer $3,600 per annum. The plaintiff was named for the latter office and continued in that employment until June 15, 1923, when he expressed dissatisfaction with a proposed decrease to $100 per month in the salary, made necessary by the financial condition of the corporation, the business having been conducted for some time previously at a loss. The matter was considered by the board of directors at a meeting attended by both parties. Miller was reëlected, but his compensation, as well as that of the president, was reduced to the monthly sum above named. Plaintiff, being unwilling to accept the smaller pay, withdrew from further service, though no attempt was made by him to have a proper allowance fixed by arbitration, a course which had been provided by the parties in their contract. He then demanded that the stock purchased be taken over by Rodd at its book value "as of the end of the previous fiscal year." The certificate was not tendered, and could not be, because in the possession of a bank which held it as collateral security for money borrowed. This suit was then brought to recover the amount alleged to be due by reason of the refusal of defendant to perform the obligation claimed to have been assumed by him.

An affidavit of defense was filed, contended by plaintiff to be insufficient, and, for this reason, a motion for judgment was made. The court in banc discharged the rule granted, on the ground that the statement disclosed no cause of action, holding that the rights of Miller had not been violated so as to justify his withdrawal from the company, giving him the right to demand that his interest in the concern be repurchased by Rodd,—the lowering of the salary not constituting a breach of the contract stipulations. The conclusion was based on a consideration of the writing itself, and such additional material averments as appeared in the pleadings of record, matters for the court to pass upon. If its interpretation of the meaning of the words used is correct, then the claim of plaintiff is without foundation, and the action was properly dismissed, irrespective of other defenses interposed.

The controversy hinges upon the phrase found in paragraph three of the agreement, which follows the naming of certain sums to be temporarily paid for the services rendered by the respective officers, and reads, "provided, however, that the said amounts shall be adjusted not less than every two years from date, and revised as the services rendered by each of the parties would indicate." This was said by the three judges presiding to mean "very plainly" that the salaries might be altered whenever the contingencies contemplated arose, making such change proper, and this might be done at any period, but must take place at least within two years. A contrary construction was urged by the appellant, it being claimed that the adjustment provided for could not be had until the full time named had elapsed, but this position was not sustained. No exception was taken to the order discharging the rule, nor did plaintiff appeal as permitted by statute.

Later, the case was brought to a hearing, and terminated in the entry of a compulsory nonsuit, which the court in banc, composed of judges other than those who

disposed of the rule for judgment, refused to remove,—taking the same position as that assumed by those who considered the question in the first instance,—holding the rate of compensation could be altered within two years, if necessary, there being no averment or proof that the action was dishonestly taken or fraudulent. The solution of the controversy presented rests on the view taken of the words appearing in the writing. Both parties argue the meaning is clear, but reach an opposite conclusion as to the correct construction. Five judges in the court below have held the contract provides for an alteration of salary within two years, when deemed necessary or advisable, while appellant contends the full period named must elapse before any change is permissible. To sustain the latter position, it is necessary to change the affirmative statement,—that there must be a readjustment, qualified by the provision as to when it is to take place,—to a negative, by having it read, "shall *not* be adjusted" in less time than every two years. The omission of words used (Phila. v. River Front R. R. Co., 133 Pa. 134), or the transposition of them, as a result of which the meaning is altered, cannot be permitted, unless necessary to carry out some plainly manifested intent: Aaron v. Woodcock, 283 Pa. 33. We cannot read the clause in question without coming to the conclusion that the positive command of an "adjustment" was qualified by the words which followed, so as to provide that at least once within the time mentioned the relative salary rights shall be determined, and that a like course shall be pursued within a similar period thereafter is indicated by the use of the word "every," the equivalent of "each": 21 C. J. 1260. All words must be construed in connection with the context, to determine the intent of the parties, and, where a relative term or phrase is used, the effect of it must be found by the court from a consideration of the writing as a whole: Sparks v. Pittsburgh Co., 159 Pa. 295; Hoffman's Case, 14 W. N. C. 563; Friedman v. U. S., 255 U. S. 468, 65 L. ed. 735.

The parties may, by appropriate words, indicate that a certain thing shall or shall not be done at a fixed time, and not before. The phrase here employed does not require the adjustment only after two years, but at some time "not to exceed" that limit: Hoffman v. County of Clark, 61 Wis. 5, 20 N. W. 376; Warren Mfg. Co. v. Hoffman, 62 Md. 165, 170; Watson v. Salem (Or.), 164 Pac. 567; Kensington Distilling Co.'s License, 45 Pa. Superior Ct. 110. The words "not less than" mean "at least": Com. v. Brown, 210 Pa. 29, 34. If the latter be read as a substitute, in connection with the other language used, particularly the concluding phrase, it is evident that a change was contemplated at some time within the period named, and not necessarily at the end thereof, as contended by plaintiff.

Significance is attached by appellant to the fact that the salary of Miller was fixed at a sum "per annum," which it is said indicates an employment from year to year. This overlooks the presumption that, when such language is used, a hiring for an indefinite term is intended, in the absence of definite expressions showing the contrary to have been in mind: Hogle v. DeLong Hook & Eye Co., 248 Pa. 471; Haldeman v. Read Machinery Co., 80 Pa. Superior Ct. 578. Indeed, in the present case, the plaintiff, in his letter protesting against the change in the rate of compensation, declared it was then calculated on a basis of $300 per month, negativing any idea that the compensation provided was an annual allowance. It is further urged that the salary clause was inserted to assure to Miller the receipt of the sum named for at least two years,—that this was part of the consideration for the purchase of the stock,—and to hold otherwise would be to deprive him of a benefit to which he was entitled. An examination of the agreement of sale does not show this assertion to be well founded. Rather it indicates that adjustments of pay should be made whenever the services justified, and this was of importance to the plaintiff, since, at the begin-

ning, Rodd, with experience, was to receive $8,000, while he, with no knowledge of the work, was limited to $3,600. It is more reasonable to suppose the latter party would make provision for a possible change so that an increase in his compensation would promptly follow as soon as he learned to perform the new duties assumed, and his services became more valuable. Further, it should be noted that care was taken to protect against the contingency of unfair reduction,—a situation which appellant claims became possible if the meaning ascribed is sustained,—by directing that if any such dispute should arise, the controversy was to be adjusted by arbitration. We are not convinced by any of the arguments presented that the construction made by the court below was erroneous, but, on the contrary, are of opinion that the terms of the agreement were correctly interpreted.

One other matter, complained of in the second assignment of error, requires consideration. To establish the intention of the parties, it was proposed on the trial to prove the negotiations leading to the execution of the contract, the offer being to show that Rodd had been anxious to make sale of the stock, and had prepared the agreement,—facts already in evidence,—and generally to explain the attending circumstances at the time of its signing. As stated by appellant in his brief, the effort was to establish that Miller was previously told "it would be a two-year job at least for him." There was no attempt to discharge him within that time, but only to limit the compensation. In view of the written agreement, expressing the consummated understanding of the parties, this testimony was inadmissible. If the statement of claim had averred fraud, accident or mistake, and the offer had been of proof to substantiate such assertion, it would have been properly receivable, but it was incompetent for the plaintiff to testify to an intent to provide differently for the contingency which arose, when he failed to set forth in full his understanding in the contract which he signed. The words appearing

were not ambiguous, or used in any technical sense, and the construction of their meaning was for the court: Carson v. Hosiery Co., 15 Pa. Superior Ct. 476; Baldwin v. Magen, 279 Pa. 302; Sparks v. Pittsburgh Co., supra; Silver v. Bush, 213 Pa. 195.

An examination of the record convinces us that it was correctly held that the change in salary within two years was permissible under the terms of the agreement, and that the alteration did not give to plaintiff the right to compel a repurchase of the stock. No recovery can therefore be had for damages based on the refusal of defendant to comply with the demand that he do so. A discussion of other suggested legal defenses becomes unnecessary.

The judgment is affirmed.