## STINSON v. EDGEMOOR IRON WORKS, Inc.

### Civil Action No. 343.

District Court, D. Delaware.

June 26, 1944.

Cornelius C. O'Brien, of Philadelphia, Pa., and Aaron Finger (of Richards, Layton & Finger), of Wilmington, Del., for plaintiff.

Clair J. Killoran and John VanBrunt, both of Wilmington, Del., for defendant.

LEAHY, District Judge.

Defendant has now moved for summary judgment after its motion to dismiss failed. See 53 F.Supp. 864. The facts concerning the contract in suit are found in the former opinion. Upon stipulation, plaintiff's testimony was taken by deposition which, supported by an affidavit of defendant's president, is the base for defendant's motion for summary judgment.

The contract of employment is in writing and in the form of an interoffice com-

munication.[1] Plaintiff's deposition, together with the affidavit of defendant's president, B. D. Beamish, establishes that no dispute exists as to the contract terms. This is clear by the following excerpts:

"By Mr. Killoran [defendant's attorney]:

"Q. Now then, the next page is Exhibit E. Your complaint—by that, I mean the statement in this bill—filed by your counsel, states that you were employed for a year on March 12, at $8200 per year? A. That is right.

&ast;&ast;&ast;&ast;&ast;

"Q. And was this employment which was entered into March 12, 1943, initiated by you or by the company? A. By the company.

&ast;&ast;&ast;&ast;&ast;

"Q. Your new arrangement entered into with Edge Moor Iron Works, Inc. on March 12, which was retroactive till February 21, 1943—was that a verbal contract or a written contract? A. I think it was a written contract. Here it is here.

"Q. A written contract; and when you say 'written contract' you refer to Exhibit E? A. That is right.

&ast;&ast;&ast;&ast;&ast;

"Q. Mr. Stinson, so that I understand you, do I understand you to say that the letter of March 12, which we have identified as Exhibit E represents your contract between Edge Moor Iron Works, Inc. and yourself relative to a hiring at $8200 per year for one year? A. That is right.

&ast;&ast;&ast;&ast;&ast;

"Q. And that there was no verbal agreement, undertaking or other represen-tation on behalf of the company what would modify that in any way?

&ast;&ast;&ast;&ast;&ast;

"Mr. O'Brien: That is objected to.

"Mr. Killoran: Before or at the time? I will withdraw that question. It is an awkward question anyway.

"Q. Does the letter accurately represent the understanding had between you and the company relative to your new employment arrangement?

"Mr. O'Brien: That is objectionable, but I am not going to press any objection to it, because *that contract speaks for itself, and any understandings entered into by him verbally would be considered to be merged in the writing.* And may I say for the record and for your benefit, that we do not claim any writing other than this writing; *we depend for our rights upon a certain memorandum entitled 'Salary Adjustment', dated March 12, 1943, a copy of which is attached to the complaint as Exhibit E, and which we contend speaks for itself.*

"By Mr. Killoran:

"Q. And that is your understanding, Mr. Stinson, as your counsel has expressed it for you? A. *That is right.*

"Mr. Killoran: No further questions.

"Mr. O'Brien: *In other words, we do not contend, Mr. Stinson, that there were any verbal statements made inducing the execution of this paper, other than contained in the paper itself: in other words, that the writing speaks for itself."* (Emphasis supplied)

---

[1] The following is a copy (Exhibit E) of the contract:

"Interoffice
"Edge Moor Iron Works
"To: Mr. J. A. Stinson
"Re: Salary Adjustment
"From: B.D.B.
"Date: March 12, 1943

"As discussed with you, I recently applied to the Stabilization Board to permit your salary to go on a fixed basis at the rate established by your approximate last year's earnings. At that time, our profits for 1942 had not been established, particularly as the physical inventory on December 31st was much less than the book inventory, and indicated that the profits which we thought we had made in the Autumn were illusory. The nearest approximation which could be made at that time was a fixed salary of $8,200 a year.

"As I discussed with you, I put this matter to the Stabilization Board, not as a salary increase—although in fact it may be higher than your present arrangement would make in 1943—but merely as an adjustment to a fixed salary and I consider, therefore, that the way is open to make one application for a salary increase at a later time.

"Approval has come through from the Board to make this change and your salary, therefore, beginning February 22, 1943, will be $8,200 a year. An adjustment of 1942 will be made as soon as we receive the Auditor's statement for 1942, which I expect will be next week, and for the months of January and February as soon as the February statement comes down, which I expect will be before the end of the month.

"B. D. Beamish (signed)
"BDBEAMISH:M"

No issue of fact is raised because concededly the interoffice document is a true representation of the agreement between the parties. Defendant contends that this court, under the doctrine of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, as extended by subsequent Supreme Court cases, is bound to follow the Delaware Superior Court case of Greer v. Arlington Mills Co., 1 Pennewill, Del., 581, 43 A. 609, which it claims is authority for holding that the interoffice memorandum constitutes a hiring at will and not a hiring for a period of one year. Since Greer v. Arlington Mills Co., supra, is decisive [2] that the interoffice memorandum constitutes a hiring at will, plaintiff's contention will now be discussed.

■■■ The applicability of the Delaware Superior Court case of Greer v. Arlington Mills Co. Concededly since Erie R. Co. v. Tompkins a federal district court must follow the law of the state in which it sits in matters of substance where jurisdiction is founded upon diversity of citizenship. Plaintiff here contends, however, that a federal district court is not bound to follow the law established by a lower or inferior court such as the Superior Court of the State of Delaware when it sits as a nisi prius court. The parties agree that the only case in Delaware bearing on the case at bar is Greer v. Arlington Mills Co., supra, and that the Supreme Court of Delaware has never passed upon a similar contract of employment. Following Erie R. Co. v. Tompkins, supra, the Supreme Court has held that a federal district court is bound by decisions of state courts which are not the highest courts of the states. Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (from 3 cir.); Six Cos. of Cal. v. Joint Highway Dist. No. 13, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114 (from 9 cir.); West v. American Telephone & Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956 (from 6 cir.); Stoner v. New York Life Ins. Co., 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (from 8 cir.). In the Field case, supra, the federal district court sitting in New Jersey was concerned with the applicability of two state precedents from the Court of Chancery. The Circuit Court of Appeals held that the district court was not bound by these decisions. The Supreme Court reversed and said [311 U.S. 169, 61 S.Ct. 178, 85 L.Ed. 109]: "We think that this ruling was erroneous. The highest state court is the final authority on state law (Beals v. Hale, 4 How 37, 54, 11 L. Ed. 865; Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 114 A.L.R. 1487), but it is still the duty of the federal courts, where the state law supplies the rule of decision, to ascertain and apply that law even though it has not been expounded by the highest court of the State. See Ruhlin v. New York Life Ins. Co., 304 U.S. 202, 209, 58 S.Ct. 860, 862, 82 L.Ed. 1290. An intermediate state court in declaring and applying the state law is acting as an organ of the State and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question. We have declared that principle in West v. American Telephone and Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, [132 A.L.R. 956], decided this day. It is true that in that case an intermediate appellate court of the State had determined the immediate question as between the same parties in a prior suit, and the highest state court had refused to review the lower court's decision, but we set forth the broader principle as applicable to the decision of an intermediate court, in the absence of a decision by the highest court, whether the question is one of statute or common law." It becomes unnecessary to consider whether the Superior Court [3] of the State of Delaware is comparable to

---

[2] In the Greer case the plaintiff testified that he was employed in accordance with an agreement: "The agreement was that I was to receive $5000 a year for my services as manager of Arlington Mills Manufacturing Company." There was no conflict in the evidence as to the term of service or the contract itself. On the basis of the undisputed facts the court charged the jury that a hiring at a certain sum a year, not specifying the time, is an employment for an indefinite term and not for a year or other definite term. I think that the Greer case is precise authority for the matter now before us, for here the interoffice memorandum provided that "* * * your salary [plaintiff's], therefore, beginning February 22, 1943 will be $8,200 a year." There is no difference in substance between the language found in Exhibit E here and the language of the contract in the Greer case.

[3] Plaintiff argues that Fidelity Union Trust Co. v. Field, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109, and subsequent decisions, extending the doctrine of Erie R.

the New Jersey court involved in the Field case, supra. This court is bound by Greer v. Arlington Mills Co., supra, in any event, because an analysis made "from all the available data" (West v. American Tel. & Tel. Co., 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139, 132 A.L.R. 956) indicates that the law of Delaware is what was expounded by the court in Greer v. Arlington Mills Co., supra, in its charge to the jury in that case. The law on the question as to whether a particular form of expression in a written agreement creates a hiring for a period of time or a hiring at will is in conflict. Cf. 11 A.L.R. 471 and 100 A.L.R. 836. But there is no available data which indicates that the Supreme Court of Delaware would not follow the rule of Greer v. Arlington Mills Co., supra. In fact, the inference is strong that the Supreme Court would follow that rule and that that case represents the law of the State of Delaware, for in the absence of "other persuasive data" there is every reason to believe that the Supreme Court of Delaware would follow a long-standing decision of the Superior Court,[4] especially where such decision is not at war with the overwhelming weight of authority and where, as in Delaware, the Superior Court judges also sit as Supreme Court judges. Cf. Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 125 F.2d 820.

Defendant's motion for summary judgment granted.

---

Co. v. Tompkins, hold that a federal district court is merely required to follow the decisions of a state intermediate appellate court. From this he contends that the Delaware Superior Court in Greer v. Arlington Mills Co., supra, was sitting as a nisi prius court and, therefore, the court here is not bound to take the law as found in the court's charge to the jury in the Greer case. This argument becomes irrelevant in view of the discussion, infra, concerning my guess as to what the Delaware appellate courts would decide under facts presented similar to those appearing in the instant suit.

[4] It has long been established in Delaware that the decisions of the Superior Court are required to be followed "except for urgent reasons and upon clear manifestation of error". See Wilmington Amusement Co. v. Pacific Fire Ins. Co., 2 Terry, Del., 294, 300, 21 A.2d 194, 196; MacDonough v. A. S. Beck Shoe Corp., 2 Terry, Del., 59, 64, 15 A.2d 436, 438; F. Giovannozzi v. Luciani, 2 Terry, Del., 211, 214, 18 A.2d 435, 436; Wilson v. Bethlehem Steel Co., 1 Terry, Del., 157, 161, 7 A.2d 906, 908; Hackett v. Bethlehem Steel Co., 5 W.W.Harr., Del., 317, 320, 165 A. 332, 333. The Delaware Supreme Court recently said: "The Superior Court is a court of general common law jurisdiction, and in that sense it is not an 'inferior tribunal'." State v. Harrington, Del., 27 A.2d 67, 74.

The Superior Court of Delaware possesses power to issue extraordinary common law writs, such as writs of mandamus, prohibition, quo warranto, habeas corpus and certiorari. See State v. Wilmington City Council, 3 Har., Del., 294; State v. Wilmington Bridge Co., 3 Har., Del., 312; Woolley, Delaware Practice, Vol. 1, § 17. Examination of recently decided cases reported in Atlantic Second Reporter shows that invariably the Superior Court of Delaware sits with three judges. This merely leaves two of their brethren, together with the Chancellor, who sit as members of the Supreme Court to review the Superior Court's decisions. In Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 125 F.2d 820, 822, this circuit discussed Delaware Superior Court cases as though it would have considered itself bound by them had it found such cases to be in point. Moreover, Greer v. Arlington Mills, supra, has been twice cited, but followed upon other points—once by the Superior Court, per Pennewill, C. J., and Woolley, J., in Arnold v. Sentinel Printing Co., 2 Boyce, Del., 177, 178, 77 A. 966, and once by the Chancery Court, per Curtis, Ch., in The Sussex Tr. Co. v. Bacon et al., 11 Del.Ch. 380, 385, 102 A. 785, 786. In seeking "all the available data" I have not overlooked the fact that Delaware borrowed its early jurisprudence from Pennsylvania, whose law is in accord with the law found in the charge to the jury in the Greer case. See Weidman v. United Cigar Stores Co., 223 Pa. 160, 72 A. 377, 132 Am.St.Rep. 727; Hogle v. De Long Hook & Eye Co., 248 Pa. 471, 94 A. 190; Miller v. Rodd, 285 Pa. 16, 131 A. 482.