## CHAPMAN v. TRUSTEES OF DELAWARE STATE COLLEGE et al.

Civ. No. 1399.

United States District Court
D. Delaware.

Nov. 16, 1951.

Henry A. Wise, Jr., of Wilmington, Del., for plaintiff.

H. Albert Young, Vincent A. Theisen and Januar D. Bove, Jr., all of Wilmington, Del., for defendants.

LEAHY, Chief Judge.

In the intervals of time which have been permitted me from other litigation in this court, since this case was presented to me several months ago, I have given study to the case at bar. It poses nice questions involving § 1 of the United States Constitution and the 14th Amendment and 8 U.S. C.A. §§ 43 and 47(3). The matter is here on defendants' motion to dismiss the complaint under Fed.Rules Civ.Proc. rule 12(b) 28 U.S.C. and for summary judgment by both parties under FR 56.[1] Plaintiff charges a lack of due process and a violation of the currently-called Civil Rights Laws,[2] for, it is charged, defendants, acting under color of a state statute,[3] are attempting to deprive plaintiff of his right to hold office as president of Delaware State College by means of a conspiracy between certain members of the Board of Trustees of that institution. In addition, plaintiff seeks a declaratory judgment[4] he is still the president entitled to his emoluments and asks judgment against defendants, individually, for punitive damages of $5,000.00.

The cardinal facts[5] are plaintiff-Chapman was hired as president of the college on March 16, 1950 at $6,000.00 per year, together with house, light, fuel, telephone, farm produce worth $350.00, and free use of an automobile. The contract of employment I shall not pause to detail. But, in short, it simply provides plaintiff-Chapman was offered the "position as president of Delaware State College" "at a salary of", etc., as stated above; and "Dr. Chapman accepted the position", etc. Plaintiff claims that, although on March 16, 1951 (the end of the first year) no action was taken on the renewal of his contract, on April 19, 1951, "a vote of approval was

1. The original restraining order of August 15, 1951 against defendants from interfering with plaintiff in his job was vacated on August 23, 1951. At oral argument, plaintiff, too, moved for summary judgment on the paper record of pleadings, affidavits, and exhibits.

Where both parties move for summary judgment where there may be conflicts in statements of fact, this raises another troublesome problem as to the application of the Court of Appeals' decision in Frederick Hart & Co., Inc., v. Recordgraph Corporation, 3 Cir., 169 F.2d 580, as to which a caveat has before been suggested. See Alamo v. Shell Dev. Co., D.C.Del., D.C., 99 F.Supp. 790, 797.

2. See Wilson v. Beebe, D.C.Del., 99 F. Supp. 418 (per opinion of Chief Judge Biggs—Leahy and Rodney, JJ., also sitting) for an historical analysis of the post-Civil War Civil Rights Statutes.

3. Rev.Code, Del., 1935, ch. 73.

4. Pursuant to the provisions of 28 U.S.C. §§ 2201–2.

5. The affidavits contain much factual charges of effluvium which I consider manifestly irrelevant to a decision of the matter at bar.

given to the proposed duties of the president" as outlined by himself. There is much discussion in plaintiff's affidavits that no charges were presented against him for misconduct; however, the minutes of April 19, 1951 show the Board of Trustees instructed plaintiff to advise all the faculty and employees of the college that all contracts of employment were terminated. Later, in July 1951, a vote of the Board was taken to continue the employment of plaintiff as president of the college. Plaintiff lost by majority vote.

Defendants have given long legislative history as to whether the Board of Trustees has an innate autonomy or is simply an administrative agency. There follows long exposition of the meetings of the Board of March 16, 1950, April 19—July 19, 1951. After this, certain legal propositions are offered; e. g., 1. the office of president of Delaware State College is a public office under which such president cannot obtain "any property right therein"; 2. the contract brought into suit after the expiration of one year is terminable at will; and others, which I have considered but do not think persuasive in this court to decide the issue.

I pass all these arguments[6] for the obvious reason I do not think the case at bar is properly in a United States District Court. Plaintiff can not be here suing for breach of contract because there is no diversity of citizenship. Plaintiff's main reliance, on the contrary, for federal jurisdiction is Miller v. Rivers, D.C.Ga., 31 F. Supp. 540, which was an action, bottomed on the same legal theory as is the case at bar, against the Governor of the State of Georgia and which challenged his right to remove a chairman of the State Highway Board of that State during his term of office. The Federal Court sitting in Geor-

gia took jurisdiction to review such action, under applicable federal statutes such as are here involved, only after the rights of the plaintiff in that case "to hold his office and to perform the duties thereof unmolested [had] been adjudicated by the State Court by judgments not reversed or set aside and those judgments [constituted] the law of the case as to those matters and" were recognized as such by the Federal Court sitting in Georgia. The nub of the case is: the Federal Court intervened only after the complaining party, supported in his view by a particular State Court decision which announced his rights, was thwarted of his rights by the executive branch of the state government. The other federal cases cited by the plaintiff in the case at bar may likewise be distinguished as not in point with equal facility.

Thus, as I view the delicate balance which exists between State and Federal jurisprudence, only a case of manifest oppression will justify a Federal Court in enjoining state officials acting *colore officii* in their conscientious endeavor to fulfill their duty to the State.[7] A Federal Court should not enjoin "activities of state officers discharging in good faith their supposed official duties" except "'in a case reasonably free from doubt'".[8] These are the written words of a great jurist— Mr. Justice Cardozo, who said:[9] "The case thus far has been considered from the viewpoint of the substantive law, the basic rights and duties contested by the litigants. There is another path of approach that brings us to the same goal, an approach along the line of the law of equitable remedies. Caution and reluctance there must be in any case where there is the threat of opposition, in respect of local controversies, between state and federal courts. Caution and reluctance there must

6. In particular, I pass the contract question, except to refer to my decision in Stinson v. Edgemoor Iron Works, D.C. Del., 55 F.Supp. 861, where I found the Delaware law in Greer v. Arlington Mills, 1 Pennewill, Del., 581, 43 A. 609, to be settled in contract situations such as is presented in the one *sub judice*.

7. Cf. Petroleum Exploration, Inc., v. Public Service Commission of Kentucky, 304 U.S. 209, 58 S.Ct. 834, 82 L.Ed. 1294.

8. Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 243, 77 L.Ed. 610.

9. Op. cit., 288 U.S. at pages 60–61, 53 S.Ct. at page 243.

444

be in special measure where relief, if granted, is an interference by the process of injunction with the activities of state officers discharging in good faith their supposed official duties. In such circumstances this court has said that an injunction ought not to issue 'unless in a case reasonably free from doubt.' * * * A prudent self-restraint is called for at such times if state and national functions are to be maintained in stable equilibrium. Reluctance there has been to use the process of federal courts in restraint of state officials though the rights asserted by the complainants are strictly federal in origin. * * * There must be reluctance even greater when the rights are strictly local; jurisdiction having no other basis than the accidents of residence. * * *".

My conclusions are:

1. This court declines to exercise jurisdiction in this case, if jurisdiction it has.

2. In note 6, supra, I deliberately refrained from announcing the law of Delaware as to whether plaintiff has a right to sue for breach of contract, under the particular provisions of his alleged contract with the State of Delaware.

3. I think the complaint in the case at bar should be dismissed because, under the circumstances created by the present record before me, a Federal Court should not interfere with The Trustees of Delaware State College, a state agency, which is a "body corporate of the State of Delaware".

4. Summary judgment as against all the individual defendants, as members of the Board of Trustees, as well as against those named as individual defendants will be denied. The motion to dismiss as to them will be granted. It is not, therefore, necessary to take up defendants' motion for summary judgment.

An appropriate form of order may be submitted.