HENRY A. DRAKE V. HERCULES POWDER COMPANY.

*(January 8, 1946.)*

Speakman, J., sitting.

*James R. Morford* for plaintiff.

*Francis A. Reardon* for defendant.

Superior Court for New Castle County, No. 115, September Term, 1944.

SPEAKMAN, J., delivering the opinion of the Court:
The principal question for determination by the Court

is whether the plaintiff's contract of employment on and after May 1, 1942, provided for a workweek of forty hours, and if so, his base pay during such period, or whether it provided for a workweek of indefinite or fluctuating hours.

After a careful consideration of the law and the facts, I advised counsel for the parties that I had arrived at a conclusion that was not in accord with the theories advanced by either of them in their respective briefs. I furnished to counsel for each of the parties a copy of a tentative opinion. Subsequently supplemental briefs were filed by both of the parties. In the supplemental briefs neither party receded from the position advanced in his original brief. To some extent, this opinion will follow the language of the tentative opinion.

It is apparent that at all times during the employment of the plaintiff by the defendant, the hiring was not for any fixed or definite term, consequently the hiring was a hiring at will and was determinable at the will of either party. *Greer v. Arlington Mills Co.*, 1 *Penn.* 581, 43 *A.* 609. This being so, I have no hesitation in saying that the contract of employment could have been, by mutual agreement, modified or superseded by another contract at any time with respect to work to be performed in the future. It is the contention of the defendant that on May 1, 1942, and each time thereafter when there was a salary change, a new contract of employment was made. It is of course true, that where there is such a change as claimed by the defendant, the terms of the prior contract which the parties have not agreed to change and the new terms on which they have agreed becomes the contract between the parties, but at the same time it can be properly said that there has been a modification of the original contract. Whether the original contract was modified by another contract, or other contracts, must be ascertained

from the testimony of the plaintiff and that of Harry F. Kolb, whose authority to act for the defendant has not been questioned.

■ It was conceded by the defendant that from the time of the plaintiff's employment in February, 1942, until the end of the following April, the plaintiff was a non-exempt employee of the defendant within the meaning of the *Fair Labor Standards Act of* 1938, at a salary of $225 per month for workweeks of forty hours, with time and half time for all hours worked in excess of forty. Thereafter, until the end of his employment, the plaintiff continued to be a non-exempt employee under the Act. This was established by the verdict of the jury. If the question before the jury had been for my determination upon the same evidence, I would have arrived at the same conclusion. With nothing in the record showing any changes in the plaintiff's duties which would have warranted his classification as an administrative employee, either at the time he was given the title of chief expediter, or thereafter during his employment by the defendant, I must conclude that Mr. Kolb either knew, or should have known, that all his dealings with the plaintiff were with him as a non-exempt employee.

It was further conceded by the defendant that, as a result of the verdict of the jury, the plaintiff was entitled to receive damages to the extent authorized by the Act for the period between May 1, 1942, and December 31, 1942, inclusive, but it contended that, under the evidence before the Court, during such period, by the terms of the contract the plaintiff was to be paid fixed monthly sums, and was to work the necessary hours to get his work done. On the other hand, the plaintiff claimed that during each week of said period he was employed at a base salary for workweeks of forty hours.

Concerning the matter before me there was but little conflict in the evidence. Harry F. Kolb testified to the effect that on May 16, 1942, it was decided to bring into a single headquarters a group of expediters who had been doing work on the government projects, that the force would then consist of both inside and outside expediters, and the problem arose as to how the defendant could have an expediting division under one head. That subsequently he called one Harry Fithian and the plaintiff into his office and "told them in each other's presence that Harry Drake would be chief expediter and would head up all expediting * * * that Harry Drake would direct the inside expediters and would at the same time be in charge of both groups, as chief expediter," that the plaintiff made no complaint, and that "sometime along that time he was told about his salary."

There can be no serious contention about the plaintiff's compensation for the month of May, 1942. This is so because of Mr. Kolb's testimony, which was as follows:

"Q. Did you have a consultation at that time [May 16, 1942] with Harry Drake about his salary? A. Some time around that time, yes.

"Q. What did you tell him about his salary? A. Well, I told him that as Chief Expediter, we were not permitted to pay him overtime, and that after July 1 I was increasing his salary by $25 which represented his second increase since he had been employed.

"Q. When did you give Mr. Drake his first raise? A. On May 1st.

"Q. This conversation to which you have testified before the jury, and I believe you intended to allude to the same conversation now, the conversation during which you told Mr. Drake he would no longer be on overtime,

that took place somewhere along May 15? A. I would say between May 16 and June 1st.

"Q. Then Mr. Drake had received his raise to $250 a month before this change in his status which your side of this case claims took place? A. That is right.

"Q. Then it is a fact that his raise to $250 had nothing whatever to do with this change in status for which you contend? A. I would say so, yes. I can't recall whether I discussed it, but I would say it definitely had a bearing on it.

"Q. Then it is your testimony, as I believe you said in direct examination, that you told Mr. Drake that you could no longer pay him overtime on account of the law? A. I would say so, yes. I didn't put it that way to him. I said we could no longer pay overtime after June 1st because of his new classification as Chief Expediter.

The above testimony and the admitted fact that the plaintiff was paid for the month of May, 1942, the sum of $250 is amply sufficient to show a modification of the original employment contract. By the modification the salary of the plaintiff for the month of May was increased to $250 for workweeks of forty hours, with time and half time for all hours worked in excess of forty. While the exact date of the modification was not shown, it is clear that it was prior to May 16th, which was before the alleged change in the plaintiff's status.

For the correct determination of the contractual relationship of the parties subsequent to May of 1942, I must also look to the testimony of Mr. Kolb and the plaintiff. There is little, if anything, in the surrounding circumstances or the conduct of the parties which is helpful. The pertinent testimony of Mr. Kolb was as follows:

"Q. Mr. Kolb, directing your attention to May of 1942, would you tell the Court precisely what happened in reference to the former contract that you and Mr. Drake had, and any reference that was made to a new contract in reference to employment? A. Well, Mr. Drake having operated as chief expediter; as far as the organization was concerned, I considered him chief expediter, and I really can't recall what happened to the month of May, but I can say this: the time he was officially on the record made him chief expediter. I called him in and told him that we could no longer pay overtime on account of the law, and I had no complaint from him on that score. I told him I realized he was putting in extra time and was very anxious to compensate him for that time.

"The month of June passed along and around the first of July I called him in again, and increased his salary another $25 a month and again told him that we were anxious to compensate him for his extra hours.

"On the first of September, I again called him in and increased his salary $50 a month with the same explanation, and at no time that I can definitely state beginning June 1st did he make any objection to the revised contract arrangements.

"Q. And the reason that you gave him these raises was because of the overtime that he was putting in? A. That is right.

"Q. And he could not be compensated for overtime under the Act? A. That is right.

"Q. And your statement that he would no longer get overtime was based upon your assumption that he was an exempt employee; is that right? A. That is right.

"Q. Now was he supposed to work the same number

of hours, as theretofore, wasn't he? A. Well, that was not discussed. Yes, I would say he was.

"Q. That did not involve any change as to whether he was to come to work at 8:15 in the morning and leave at twelve noon, or to come back at one o'clock and work until 5:15, that had nothing to do with that? A. That is right; anything beyond that was at his discretion.

"Q. When you notified Drake that he was no longer entitled to overtime, and you were increasing his salary did you say anything to him in reference to the number of hours that he was to work? A. Nothing whatever. It was not discussed. I simply said that he was being compensated in this manner for whatever extra hours he felt it necessary he had to put in."

On cross examination the witness testified that it was the policy of the defendant to increase the base pay of its employees when it was earned.

The plaintiff testified that after May 1, 1942, and up to the termination of his employment, his duties and the details of his job did not change in any respect. That he saw on the organization chart that he had the title of chief expediter, but that he could not recall being told so, and that he was not given any authority or control over anybody in the expediting department, nor did he ever exercise any authority or control over anyone in the department.

The plaintiff further testified that from and after May 1, and until the middle of December, he continued to turn in weekly time reports; that the reports were given to the office boy, who kept them in his desk; that he, the plaintiff, took them out of the desk when they were cleaning up at the end of the employment, and that he concluded the weekly time reports by adding the one or two weeks to the end of December, 1942, to those that were found in the desk.

He said that he knew the reports were not being turned in by the office boy to the defendant, because he knew he was not receiving the overtime.

The plaintiff denied that he was told by Mr. Kolb, or by anyone else, that his salary was being increased to compensate him for his extra hours.

The vital question to be determined is whether there was an express or implied acceptance by the plaintiff of the proposals by Mr. Kolb that the plaintiff's compensation for the month of June, 1942, and the subsequent months, should be increased, and that he should be taken off of overtime.

The defendant contends that in receiving his monthly pay check without complaint, the plaintiff accepted payment on that basis "as satisfactory," and that rights which he might have had to overtime under the original contract made in February, 1942, were waived, and in support thereof it cites *Landreth v. Ford, Bacon & Davis,* (8 *Cir.*) 147 *F.* 2d 446; *Anderson et al. v. Federal Cartridge Co.,* (*D. C.,*) 62 *F. Supp.* 775, and *Peffer et al. v. Federal Cartridge Co.,* (*D. C.,*) *Minn.* 3rd *Div.* 1945, 63 *F. Supp.* 291, 300.

Those cases were decided upon the factual situations there existing. Those facts were materially different from the fact in the instant case.

In the Landreth case, the employee was first employed at an hourly wage rate, and was paid for all hours in excess of forty worked in any week, at one and one half times his regular rate of pay. For the period involved in the action he was employed at a weekly salary, and during that time he received only the agreed weekly compensation. He was told by someone without authority that he was to be paid the agreed weekly compensation for a workweek of forty hours. In the instant case the employment was not

changed from an hourly to a monthly basis. It was at all times during the employment on a monthly basis. If I based my finding solely on the testimony of the plaintiff it would be impossible for me to find that the various increases in the plaintiff's base monthly compensation adversely affected his right to overtime compensation.

In the Anderson case, the plaintiffs, when first employed were all paid straight weekly salaries ranging from $58.40 to $104 per week. Prior to March 9, 1942, they were not "engaged in commerce or in the production of goods for commerce", within the meaning of the wage and hour provisions of the *Fair Labor Standards Act*. Subsequently the character of their work changed, and it was stipulated that after March 9, 1942, they were engaged in commerce within the meaning of the Act. During the time in controversy all the plaintiffs worked varying times, from less than forty to more than sixty hours in a workweek. Each week they received the same salary without complaint, or any indication that such was not their agreement with the company.

In the Peffer case, the facts were similar to those in the Anderson case. In the Peffer case the Court made this statement:

"At one time there was a dockage made where certain weekly salaried employees on a non-overtime basis did not work the minimum of forty hours, but all such dockages were restored to the employees in August 1943, long before the commencement of this law suit. Thus, under the practice as adopted by the defendants, while the minimum workweek was forty hours, plaintiffs received a full weekly check whether the hours were above or below forty hours per week. The only exception was when such employee began to work or quit on his own accord in the middle of or during the week."

I can well understand why in the Anderson and Peffer cases, in view of the evidence that the plaintiffs were paid the same salaries whether they worked less or more than forty hours in their workweek, it was held that their weekly salaries were intended to compensate them for all hours worked during the period in question. Such was not the situation, as shown by the evidence in the case before me. During every week of the time in controversy the plaintiff worked in excess of forty hours.

I am unable to agree with the defendant's argument that in receiving his monthly pay check without complaint, the plaintiff accepted payment on that basis "as satisfactory," and that rights which he might have had to overtime under the original contract made in February, 1942, were "waived." I must assume that the defendant means "without complaint" to Mr. Kolb or some other proper person, otherwise its position is not exactly consistent with the position taken by it on the question before the jury. There Harry Emmett Scott, an employee of the defendant, who was called as a witness in its behalf, testified on direct examination, as follows:

"Q. Did Harry Drake ever confer with you in reference to his being taken off overtime? A. Well, Harry told me on several occasions at night that he had been taken off of overtime. He complained about it.

"Q. What if anything did you say to him? A. I told him to take it up with Mr. Kolb, that I had nothing to do with that, that Mr. Kolb did handle it.

"Q. Did you tell him why he was taken off of overtime? A. I told him he was exempt from overtime.

"Q. Did Harry tell you that he wasn't exempt from overtime? A. No, he just wanted to know why he was exempt.

■ The provisions of the *Fair Labor Standards Act* providing for the payment of overtime to non-exempt employees cannot, in my opinion, be waived. It must in every case be given force and effect as binding upon the parties, and as a part of the employment contract itself. The Act by its terms states the objectives of the legislation to be the elimination of labor conditions detrimental to the maintenance of the minimum standard of living necessary for the health, efficiency and general well being of the workers, and the eradication of the burden on commerce resulting from sub-standard labor conditions. 29 *U. S. C. A.* § 202. It must therefore follow that the public has an interest in the provisions of the Act, and it would be against public policy to preclude payment of the full amount of the compensation guaranteed by its terms by reason of waiver or of delay or inaction on the part of a non-exempt employee in seeking the enforcement of his rights under the provisions of his employment contract, including the provisions of the Act guaranteeing the payment of overtime compensation.

I am unable to agree with either of the parties or their interpretation of the evidence. At the conclusion of the hearing, I had arrived at a deep impression that the parties had never reached a mutual understanding in regard to the reasons for the various increased amounts paid to the plaintiff as compensation. A careful review of the evidence has strengthened this impression.

■ In a case such as the instant one, a modifying agreement must have all the requisite of a valid and enforceable agreement, or it will not be binding. The question of modification depends primarily on the intention of the parties. 13 *C. J.* 590; 17 *C. J. S., Contracts*, § 374. This rule is elementary. It is well expressed in *Utley v. Donaldson*, 94 *U. S.* 29, 24 *L. Ed.* 54. There the Court said:

"There can be no contract without the mutual assent of the parties. This is vital to its existence. There can be none where it is wanting. It is indispensable to the modification of a contract already made as it was to making it originally. Where there is a misunderstanding as to anything material the requisite of mutuality of consent as to such thing is wanting: consequently the supposed contract does not exist, and neither party is bound. In view of the law in such case, there has been only a negotiation resulting in failure to agree. What has occurred is as if it were not, and the rights of the parties are to be determined accordingly."

From the evidence it is apparent to me that Mr. Kolb, at the time of his talk with the plaintiff in May, 1942, had a formed intention to do that which, in his opinion, could be done to avoid the payment of overtime compensation to the plaintiff. It is also apparent to me from the evidence that he failed to make his intention effective. At the time of his talk and thereafter, he failed to charge, or to instruct others to charge, the plaintiff with the performance of any additional material duties. Also, at that time or thereafter, he failed to specifically discuss with the plaintiff anything respecting work hours.

The defendant relies on the testimony of Mr. Kolb that he told the plaintiff, in effect, that on account of the law he could not pay him overtime, and he was making increases in his salary to compensate him for his "extra hours" or "extra time," together with the surrounding circumstances for the purpose of showing that, on and after May 1, 1942, the workweek of the plaintiff became a workweek of indefinite or fluctuating length. The plaintiff denied that he was ever told, in effect, by Mr. Kolb, that his salary was being increased for such purpose. This is the only material conflict in the testimony. In my attempt to reconcile the

testimony, I have not overlooked the contention of the defendant that Mr. Kolb's testimony should be accepted because it is a positive recollection on his part, as "against a mere failure on the part of Drake to recall the incident." Drake did not testify that he could not recall the incident. He was just as positive that the language was not used by Mr. Kolb as was Mr. Kolb that he used it. The language used by Mr. Kolb, according to his testimony, is not exactly clear to me, and if used by him and heard by the plaintiff, it would not be surprising if the plaintiff gave to it a meaning different from that claimed by the defendant.

Even Mr. Kolb drew different conclusions as to the meaning of his language. He testified to the effect that as a result of his talk with the plaintiff in May, 1942, the plaintiff was supposed to work the same number of hours as theretofore, and he also testified to the effect that there was to be no change in the regular workweek of forty hours, and that "any time beyond that was at his [the plaintiff's] discretion."

I am unwilling to believe that either Mr. Kolb or the plaintiff gave false testimony, therefore I am compelled to believe that the plaintiff did not hear or did not understand what Mr. Kolb said about compensation for extra time.

My conclusion is that the original contract of February, 1942, was modified as of May 1st of that year by increasing the monthly compensation of the plaintiff from $225 to $250. That by the modification, for the month of May and thereafter during the time of his employment, the plaintiff was entitled to receive from the defendant the sum of $250 per month for workweeks of forty hours, with time and half time for all hours worked in excess of forty.

On the question of overtime compensation, there

remains for determination the contention of the plaintiff that he was entitled to eleven days vacation during the time of his employment, with pay, and that overtime compensation should be figured accordingly. There is nothing in the record which shows that there was any agreement between the parties about vacation time, therefore there is no overtime to be figured on vacation time.

During the period between May 1, 1942, and December 31, 1942, the plaintiff claimed he was entitled to be paid compensation for 35.75 hours of overtime figured on vacation time. With these hours excluded, it appears that during said period he worked an excess of 807.25 hours, for which he was entitled to receive compensation at one and one-half his hourly rate of pay. I find that the hourly rate of pay figured upon the base pay of $250 per month for workweeks of forty hours is $1.4422, or $2.1633 on the basis of time and half time, therefore, in accordance with the provisions of Section 16 of the *Fair Labor Standards Act,* there was due for said period overtime compensation in the amount of $1746.32. The plaintiff assuming, but not admitting, the correctness of the Court's conclusions, claims that under the pleading of the facts the defendant is not entitled to a credit on account of the amount due as overtime compensation to the extent of the aggregate amount paid to him in excess of $250 per month for the said period, which is the sum of $525. One of the pleas filed by the defendant is nil debit. This is the general issue in debt when founded on simple contract or legal liability. When pleaded in debt on simple contract it puts everything in issue and compels the plaintiff to prove the whole of his declaration. 2 *Woolley on Del. Prac.,* Sec. 1477, consequently on the amount due for overtime compensation the defendant is entitled to a credit of the said sum of $525, leaving a balance due and unpaid of

$1221.32. My conclusion is that the plaintiff is entitled to recover from the defendant under the provisions of Section 16 of the said Act overtime compensation in the amount of $1221.32, an additional amount of $1221.32 as liquidated damages, an attorney fee of $750, and the costs of the action.

Judgment will be entered in accordance with this opinion.