JOHN J. CONNELL V. DELAWARE AIRCRAFT INDUSTRIES, INCORPORATED, a Corporation of the State of Delaware.

(*July* 15, 1947.)

TERRY and CAREY, J. J., sitting.

*James R. Morford* and *Morton E. Evans* (of Marvel and Morford) for plaintiff.

*Clair J. Killoran* (of Killoran and Van Brunt) for defendant.

Superior Court for New Castle County, Summons Debt, No. 211, March Term, 1946.

CAREY, J., delivering the opinion of the Court:

The problems presented in this case are essentially factual in nature; it will therefore be necessary to review the evidence in some detail. Many contentions, which might otherwise exist, have been eliminated by stipulations.

By Section 207 of the *Fair Labor Standards Act,* 29 *U. S. C. A.,* the defendant was prohibited from employing any of its employees who were engaged in commerce or the production of goods in commerce for a workweek longer than forty hours without paying such employee overtime compensation at a rate of not less than one and one-half times the regular rate at which he was employed. Section 216 of said Act creates a criminal responsibility and gives the employee a right of recovery in a civil action. Those parts of Section 213 of the Act which are pertinent here are as follows:

"(a)   The provisions of section 206 and 207 of this title shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator) * * *".

"(b)   The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49: * * *".

Pursuant to his statutory authority, the Administrator has defined an administrative employee as follows:

"Sec. 541.2 Administrative.—The term 'employee employed in a bona fide * * * administrative * * * capacity' in section 13(a) (1) of the Act shall mean any employee

"(A) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

"(B) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in these regulations), where such assistance is nonmanual in nature and requires the exercise of discretion and independent judgment; or

"(2) who performs under only general supervision, responsible non-manual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

"(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment; or * * *".

Before discussing the evidence and the substantive contentions of the parties, a preliminary matter should be decided. At the close of the plaintiff's case, the defendant moved for a non-suit. This motion was based upon the defendant's argument that the burden is upon the plaintiff to negative the existence of all exemptions contained in Section 213. He admitted that the evidence presented by the plaintiff, if believed, was sufficient to take the case out of all exemptions except the administrative exception and the one quoted above as Section 213(b) (1), which refers to employees over whom the Interstate Commerce

Commission has certain jurisdiction. The motion for non-suit was denied upon the theory that the burden of proof is not upon the plaintiff but is upon the defendant to show the existence of any such exemptions. Counsel were informed, however, that the question could be argued at greater length in the briefs.

We have again considered the propriety of our ruling and are of. the opinion that the motion for non-suit was properly denied. The existence of any exemptions under Section 213 is, in our opinion, a matter of defense and the burden of proof is upon the defendant. This is the Federal Rule, *Smith v. Porter*, 8 *Cir.*, 143 *F.* 2d 292; and it is in accord with the following State authorities: *Schneider v. Sports Vogue, Sup.*, 35 *N. Y. S.* 2d 341; *Bush v. Wilson & Co.*, 157 *Kan.* 82, 138 *P.* 2d 457; *Pakarinen v. Butler Bros.*, 218 *Minn.* 496, 16 *N. W.* 2d 769; *Cotton v. Weyerhaeuser Timber Co.*, 20 *Wash.* 2d 300, 147 *P.* 2d 299, 302. In cases involving conflicts of law, the law of the forum is generally followed as to procedural matters but not as to substantive matters. 11 *Am. Jur.* 522. Sometimes the burden of proof is so inseparably interwoven with substantive rights as to render a modification of the foregoing rule necessary, lest a party be thereby deprived of his legal rights. *Rest. Conflict of Laws Sec.* 595. It is not necessary to say in this instance that such a close relationship exists. We do suggest that we are here dealing with an act which deserves the greatest possible uniformity of interpretation and application. Under the act, State Courts have concurrent jurisdiction with Federal Courts, and practical considerations would dictate the desirability of applying the Federal rule to the point now under consideration, even if a conflict should exist between the rules of the respective jurisdictions.

In truth, however, we are convinced that no .conflict

exists between the Delaware rule and the Federal rule on this point. The Delaware decisions have been summarized in 1 *Woolley on Delaware Practice* 257 as follows:

"In pleading on statutes containing provisos and exceptions, the courts distinguish between a proviso in the description of the offence and a subsequent exemption from the penalty under certain circumstances, and between an exception in the enacting clause, and an exception in a subsequent clause. The reason is not because an exception is not as forcible in one clause as another, but because where it is a part of the clause which gives the action, that clause cannot be declared on truly without showing and denying the exception. Hence it is a general rule of pleading upon statutes, that where the exception or qualification occurs in the enacting clause, or in the same section, or in a preceding section of the statute, or in a preceding statute, the plaintiff must negative it—that is, he must show that the matter pleaded is not within the exception; but where the exemption is contained in a proviso, in a subsequent section or statute, and not incorporated with the enacting clause by any words of reference, it is a matter of defense to come from the other side and need not be negatived in the narr. When a saying or exception in a statute is contained in a section subsequent to that upon which the plaintiff founds his action, the defendant must plead it, and show that his case comes within the exception, if he intends to take advantage of it, as the plaintiff is not bound in his narr to negative it".

Those principles are by no means peculiar to Delaware law but have been followed by common law Courts for centuries. 1 *Chitty Pl.* 256. In *Will's Gould on Pleading* 365, we find the rule expressed in a slightly different manner:

"In an action founded on a penal statute, the subject

of any exception, in the enacting or prohibitory clause of the Act, must in the declaration be excluded by averment; but of any proviso or qualification, in a separate substantive clause, the declaration need not take notice".

Assuming the burden of alleging means also the burden of proving, how does this rule affect the instant case? The defendant points out that Section 207 of the Act prescribes the maximum hours per week for an employee who comes within its scope unless he is paid overtime compensation; Section 213 prescribes the exemptions; and Section 216 provides a criminal responsibility and creates a right of civil action on the part of employees affected. It follows, he argues, that the exceptions occur in a section preceding the enacting clause and, under the rule above mentioned, must be pleaded and proven by the plaintiff. But, we may ask, what is meant generally by the term "enacting clause" and what is the enacting clause of this statute? To find the answer to that question, it becomes important to consider the reason for the rule. Parenthetically, it must be said that the rule is manifestly an artificial rule of thumb if followed literally and without regard to the reasons for its existence. See *United States v. Oregon Short Line R. Co.*, (*C. C.*) 160 *F.* 526.

The true reason for the existence of this practice is set forth in a number of cases, including *Silver v. Rhodes*, 2 *Harr.* 369. That reason is that, where the exception is an intrinsic part of the clause which gives the action or creates the right, that clause cannot be declared on truly without showing and denying the exception. In considering any given statute, therefore, the Court must find the part which creates a right of action or prescribes the crime. Viewed in this manner, for purposes of the rule, the enacting clause may be any part of a statute, or it may consist of several parts which, taken together, create and define

the offense or right of action. Manifestly, the enacting clause as thus defined is not required to be at the beginning of a statute nor is there any requirement that it be compressed within the limits of a single section thereof. *State v. Bevins,* 70 Vt. 574, 41 *A.* 655; *United States v. Oregon Short Line R. Co., supra; City of Astoria v. Malone,* 87 *Or.* 88, 169 *P.* 749; *State v. Rosasco,* 103 *Or.* 343, 205 *P.* 290; *Berry v. Stinson,* 23 *Me.* 140.

Turning now to the *Fair Labor Standards Act,* we find that Sections 207 and 216 must be read together in order to satisfy the requirements of the above definition. If they had been combined into one section, there could be no doubt that that section would constitute the enacting clause. The fact that they were put into two sections in different parts of the Act does not change their fundamental relationship. Since the two together constitute the "enacting clause" of this statute, it becomes clear that under the Delaware rule, the burden is upon the defendant to prove the exceptions of Section 213. Those exceptions are not "in the enacting clause, or in the same section, or in a preceding section of the statute, or in a preceding statute".

We come now to the consideration of the substantive defenses. These defenses are (a) that the plaintiff was an administrative employee and (b) that the plaintiff's hours of service were subject to regulation by the Interstate Commerce Commission. Either ground, if established, would of course be a complete defense.

The title given to the plaintiff's occupation was "outside expediter". It is doubtful if this title has any exact or precise meaning. That question is not material because in these cases title alone is meaningless. A janitor can not be converted into an executive officer merely by calling him a Vice-President; in order to effect such a change, his duties would have to be materially altered. A man's duties,

his authority and his responsibility, not his title, determine his status.

Connell had had several years experience with other companies as an expediter but his previous employment had consisted primarily of telephoning subcontractors and material suppliers in an effort to prevent any delay in the manufacturing process. Here, the plaintiff during most of the term of his employment was under the immediate supervision of Mr. Roop, the Company's subcontract supervisor. Mr. Roop described Connell's duties as "going into a vendor's plant, contacting the proper person and ascertaining if he has the proper equipment and facilities to do a job and obtain from him the earliest possible delivery date on any given item that you might have in there; and to find out his problems in the manufacture of these items; and assist him in any way that you can to carry out his end of the bargain." The plaintiff testified that he sometimes delivered unfinished parts from defendant to various subcontractors, urged them along as to the best delivery dates, made "spot checks" to see if the work was being done satisfactorily, and saw that the finished product was delivered to the next sub-contractor or back to the defendant's plant in Greenwood. In making "spot checks", he did not inspect the parts to the same degree of accuracy that was later done by the Inspection Department at Greenwood but did use micrometers and measuring gages to see if allowable tolerances had been violated. If he found that the work was proceeding unsatisfactorily, he would call Mr. Roop or Mr. Bossert, the general manager, for instructions. Sometimes he would be told to bring samples back to Greenwood where discussions would take place between Mr. Bossert, Mr. Roop and Connell as to the best course of action. Occasionally it was necessary to take a job away from a certain subcontractor and find some other firm to do the work. On two or three occasions, Connell

suggested other firms with whom he had become acquainted while working for former employers and they would be given the opportunity of showing whether or not they could do the work properly. He had no right or authority to take a job away from a subcontractor or to make any arrangements with other firms upon his own responsibility and only did so upon express instructions from his superiors. It is unquestioned that Connell had no authority to hire or discharge any employee and that he had supervision over no other employee of the Company.

At all times after the first three weeks training period, Connell was usually permitted to go upon his visits to subcontractors when and as he saw fit. His base of operations was his home in Wilmington and he would customarily go to Greenwood at least once each week for the purpose of making up his expense accounts, drawing his pay and receiving instructions. Apparently the usual practice was for his superior to say to him in effect: "Here is a certain batch of material to be made into certain parts. This is to go to one plant for one operation, from there to another plant for the second operation and so on until the work is finished and ready to be returned to Greenwood. It is up to you to see that the entire operation is properly completed as quickly as possible". The plaintiff would then use his best efforts to carry out these instructions. If any trouble developed along the line which he would not quickly straighten out by conferring with the subcontractor, he would telephone for advice and instructions. In the course of doing this, he would of course try to see that the materials or parts were delivered as speedily as possible from one point to another, sometimes calling for the company's trucks and sometimes using his own car, if the size of the load were small. The company kept no record of his hours per week; they were kept by him and were not reported to

the company. His superior officers testified that his work was satisfactory.

From the foregoing facts, can we say, as the defendant would have us, that the plaintiff was an administrative employee, as defined in the regulations quoted above? There can be no question that his salary was more than $200 per month and that his work was principally non-manual in nature. But does it require "the exercise of discretion and independent judgment"? In one sense of the term, it might be argued that almost every employee is required to use some degree of discretion and independent judgment. For instance, it might be left to a truck driver to decide which route to follow in going from one point to another; yet it would hardly be thought that this constitutes the kind of discretion and independent judgment which the Administrator had in mind. On the other hand, the traffic supervisor of a large corporation is subject to certain control by the higher officers of the Company; yet it would hardly be argued that he does not have and exercise discretion and independent judgment such as the Administrator had in mind. The division line between these two extremes has not been clearly drawn and we doubt if it is capable of precise delineation. In each case where doubt exists, the conclusion is an inference to be drawn by the Court or jury from all the facts and circumstances proven. Accordingly, without attempting to lay down any general rule, we merely say that the inference which we are compelled to draw from the facts proven in this case is that the plaintiff's employment did not fall within the meaning of the term "administrative". We say this because we feel that those instances in which Connell was called upon to exercise discretion and independent judgment were of a minor nature. The inspection work which he did was of a type which could be done by any average person of ordinary intelligence with a few hours instruction. He had

no right to hire and discharge other employees. He had no right to take a job away from one subcontractor and employ another; his work in that respect actually consisted solely in suggesting other possible subcontractors. In instances where he considered the work was proceeding unsatisfactorily, he could do nothing more than call his superior for instruction. The fact that he was given a three weeks training course was meaningless in this connection because, as Mr. Roop testified, a person hired as an expediter who was not expected to do any spot checking would nevertheless have had to undergo a similar course of training in order to be familiar with the Company's product and materials used.

At first glance, it might appear that this holding is inconsistent with the cases of *Ashworth v. E. B. Badger & Sons Co.*, (*D. C.*) 63 *F. Supp.* 710, and *Henry v. Chemical Construction Corp.*,—Misc.—72 *N. Y. S.* 2d 913. Upon careful examination, however, we are of the opinion that certain distinctions in the factual situations of these cases distinguish them from the instant case and that they are not controlling here. A much closer parallel is found in the case of *Drake v. Hercules Powder Company*, 5 *Terry* 69, 55 *A.* 2d 630. The Drake case was decided by a jury but Judge Speakman stated in his opinion that he would have made the same finding had the matter been left to him to decide.

Several pages of the defendant's brief are devoted to the argument that the plaintiff must have considered himself beyond the scope of the Act during the entire period of his employment because he made no claim for overtime compensation until after his employment had ceased. In fact, within a few months after he started to work, he was handed a form to be filled out, if he felt that he was entitled to such pay, but the form was never completed by him.

This argument can best be answered by saying that ordinarily the right of an employee to recover under this Act is not barred by his failure during his employment to demand overtime compensation. A contrary rule would, in many instances, enable an employer to circumvent the Act by threatening to discharge an employee who demands such pay. If the doctrine of estoppel were applicable, the employee could never recover unless he made a prompt demand and perhaps instituted suit, yet the threat of discharge would probably restrain him from taking such course. *George Lawley & Son Corp. v. South*, (1 *Cir.*) 140 *F.* 2d 439, 151 *A. L. R.* 108, certiorari denied 322 *U. S.* 746, 64 *S. Ct.* 1156, 88 *L. Ed.* 1578.

██ We now turn to the question of whether the plaintiff comes within the exemption of Section 213 (b) (1). As we have said, the burden of establishing this exemption is upon the defendant and the question is whether the defendant has successfully carried this burden. It was admitted by the plaintiff that he frequently carried parts from one sub-contractor to another or to the plant at Greenwood. This was done when the load to be carried was a comparative small one which he could get into the rear of his car. If that was impossible, he would have the goods hauled by truck. This matter of hauling parts seems to have been no part of his original contract of hire since nothing was said about it at the time he was employed. From the testimony, it appears that he did this voluntarily in order to save time and in order to eliminate unnecessary expense, since it was usually necessary for him to call upon the succeeding subcontractor at or about the same time that the lot of parts was delivered. In other words, from all that appears in the testimony, he rarely, if ever, made a trip solely for the purpose of delivering parts from one place to another. Such deliveries were purely incidental

to his regular work. When asked to give his best recollection as to how many hours per week he spent in hauling parts, he answered that he did not know. He was asked specifically whether he devoted an eight hour day per week to transporting materials in commerce. He then estimated that some weeks he would devote an eight hour day to such transportation and some weeks he did not. This is practically the only testimony in the record bearing upon that angle of the case.

The defendant relies upon the case of *Walling v. Comet Carriers, Inc., (2 Cir.)* 151 *F.* 2d 107, wherein the Court approved a regulation of the Interstate Commerce Commission to the effect that persons engaged in carriage across state lines at least one day per week could be considered as substantially engaged in Interstate Commerce so as to render them subject to the jurisdiction of that Commission. Even under that regulation, we find that the defendant has nevertheless failed to sustain its burden, inasmuch as the only evidence upon the point is the plaintiff's own testimony that some weeks he spent an eight hour day per week in transporting goods and some weeks he did not. This evidence is insufficient to sustain a finding that plaintiff was so engaged in interstate transportation as to come within the jurisdiction of the Interstate Commerce Commission with respect to his hours of work.

██ ██ It is necessarily conceded that the burden is upon the plaintiff to establish by satisfactory proof the number of hours of overtime for which he is entitled to additional compensation. *Johnson v. Dierks Lumber & Coal Co., (8 Cir.)* 130 *F.* 2d 115. In this case, the defendant criticises the records kept by the plaintiff, averring that it appears from their face that they are not contemporaneous records. The only argument advanced by the defendant on this point was that the record of hours was

entered in a certain color of pencil, whereas other records which were said to have been made at the same times were frequently entered with a different color of pencil. We do not consider this criticism valid in the face of the plaintiff's direct and unequivocal testimony that the number of hours worked each day was written down by him at the end of that day.

Accordingly, we conclude that this plaintiff has made out a proper case for recovery under the Act. It remains for us to consider the basis upon which the amount of that recovery is to be computed. This involves two questions: (1) should his base pay be grounded upon a forty hour week or upon a fluctuating week; and (2) should the time spent by him in eating meals while away from home be deducted from his computation of time.

With respect to the first of these questions, Connell stated that he was employed for a forty hour week at a salary of $60 per week. He said he was told by Bossert that he was to work five days per week and eight hours per day. On the other hand, Bossert stated that he said nothing to Connell about working forty hours per week or five days per week or eight hours per day. On the contrary, said he, Connell was told that he would have to put in long hours, especially at first. He explained this statement by the fact that Connell's predecessor had allowed the work to get far behind and by the further fact that they would be without the service of a man on this job for three weeks.

From the facts and circumstances before us, we are of the opinion that Connell was employed at a salary of $60 per week for whatever number of hours were necessary to do his job. The very nature of his duties suggests the propriety of this finding. The computation of overtime due the plaintiff will therefore be computed

upon the basis of a fluctuating week as defined in *Overnight Motor Transp. Co. v. Missel,* 316 *U. S.* 572, 575, 62 *S. Ct.* 1216, 86 *L. Ed.* 1682.

■■ When the plaintiff was away from home, his employer reimbursed him for meals and lodging. The defendant contends that the plaintiff is not entitled to overtime compensation for the time consumed in actually eating meals, which the plaintiff estimated to be one and one-half hours per day. We are of the opinion that this contention is proper and reasonable. Certainly, time spent in eating meals at home is not compensable and we see no reason why there should be any difference in this respect for time so spent when Connell was away from home. Indeed, there appears no more reason for allowing payment for such time than for permitting a recovery for time spent sleeping when he was away from home overnight. In computing the amount of recovery, therefore, deduction should be made for meal hours. This conclusion is in accordance with a ruling of the Administrator, which, while not controlling upon us, is nevertheless entitled to some weight unless clearly wrong. *Interpretative Bulletin No.* 13 *Wage and Hour Division.* See *Fox v. Summit King Mines,* (9 Cir.) 143 *F.* 2d 926.

In his brief, defendant's counsel suggests that, in the event there is to be a recovery by the plaintiff, an opportunity be given him to confer with plaintiff's counsel for the purpose of working out and computing the exact amount of the recovery. Having laid down the basis for such a computation, we feel that his suggestion is practical and the opportunity sought will therefore be granted. If an agreement cannot be reached in this manner, we will of course take whatever steps are needed to arrive at a definite figure. Pending determination of that definite amount, we will refrain from setting the amount of attorney's fee which is to be included.