**Lawrence A. BARISA, Plaintiff,**

**v.**

**CHARITABLE RESEARCH FOUNDATION, INC., a Delaware corporation, Defendant.**

Superior Court of Delaware,
New Castle.

Jan. 25, 1972.

Arthur J. Sullivan and Richard P. Beck of Morris, James, Hitchens & Williams, Wilmington, for plaintiff.

Joseph T. Walsh, Wilmington, for defendant.

STIFTEL, President Judge.

Suit for wrongful discharge of employee. Verdict for employee. Defendant Charitable Research Foundation (CRF) moves, pursuant to Superior Court Civil Rule 50(b), Del.C.Ann., for a judgment n.o.v.

Barisa was employed by CRF as an administrator-accountant in July of 1966; the employment contract extended for a period of five years beginning August 15, 1966 and ending July 14, 1971. Barisa's primary areas of responsibility lay in the business aspects of a museum operated by CRF known as "Project 400". Those areas were defined in the contract as follows:

"(a) Barisa shall perform such duties of an administrative nature as shall be assigned to him from time to time by the Museum Director, including employment and all other responsibilities for museum personnel in addition to personnel in (b) and (c) below.

"(b) Barisa will be responsible for the fiscal and accounting phases of the museum's operation including preparation of such books, records, reports and other data as the Museum Director or the Board of Directors of the Foundation may require."

In the event that Barisa's employment was terminated prior to the expiration of the five-year period, the contract provided that:

"6. If Barisa shall fail to properly discharge his duties as Business Administrator, then, in that event, Foundation shall have the option to discharge him, anything to the contrary herein notwithstanding, and in the event of said discharge, Barisa shall forfeit any right to further compensation. Should this contract be terminated by Foundation without cause, Barisa shall be entitled to receive one year's salary as severance pay. Should Barisa resign his employment either during the term of this contract or at any time thereafter, he shall not be entitled to receive any salary or severance pay after the effective date of his resignation."

From July, 1966, until March, 1968, Barisa worked under the supervision of the Museum Director, Walter Mickle. When Mickle's employment was terminated in March, 1968, Barisa was given an increase in salary and additional duties by the Acting Director of the Museum, Ernest N. May. Mr. May was the donor of all funds for the construction and operation of the museum. One of Barisa's additional duties was the drafting of a set of operating rules for museum personnel known as the "Administrative Routine and Policies". These rules contained a section on disposal of surplus property of the museum which was added by Mr. May. The section, title "Surplus, Salvage and Reclamation", provided for a bidding procedure to be supervised by Barisa as Business Administrator.

The provision which plaintiff admittedly violated and for the violation of which he was discharged provided:

> "7. It is further understood that the Business Administrator and any person above him (including trustees) are automatically disqualified from bidding on or purchasing anything whatsoever."

On July 29, 1968, the first sale of surplus property was held under the procedure outlined in the "Administrative Routine and Policies." After determining that no other employee wanted one of the items for sale—a garden cart, Barisa arranged for a lower eschelon employee, Reginald Palmer, to submit a bid for him on the cart. Barisa recorded the bid in Palmer's name and recorded the cart as sold to Palmer, and had the cart delivered to Barisa's home.

The next day, Mr. May, upon being told that Barisa had the cart, examined the records of the sale and checked the homes of both Barisa and Palmer for the cart. After finding the cart at Barisa's home rather than at Palmer's, Mr. May confronted Barisa on July 31 and asked him about the cart. Barisa admittedly lied and said he had merely borrowed the cart. May asked for Barisa's keys and told him to take whatever vacation he was entitled to while awaiting the further action of the Board of Directors regarding severance pay. Barisa was later advised that he was discharged for cause without the one year severance pay.

Barisa has admitted that he deliberately and knowingly violated the regulations of CRF regarding disposal of surplus property:

> "Q. You were under the impression, were you not, Mr. Barisa, that you were disqualified from participating in this [bidding] regardless of the value of the item involved?
>
> "A. That is correct.

> "Q. You knew that in advance of submitting this bid through Mr. Palmer, did you not?
>
> "A. That is correct.
>
> "Q. In submitting this bid, you knew that you were deliberately going contrary to the regulations.
>
> "A. That is right."

His testimony shows that he tried to conceal this violation from his employer by falsifying records concerning the sale of the surplus garden cart and by falsely informing his employer that he had merely borrowed the cart from Palmer:

> "Q. When Mr. May confronted you with the bidding situation, did you tell him that you had merely borrowed the cart as a way of trying to keep the incident quiet?
>
> "A. Yes.
>
> "Q. That was not true, of course, was it?
>
> "A. No, it wasn't."

Despite Barisa's attempts to justify his actions as being for the benefit of CRF and in defense of his job, I find as a matter of law that his conduct was sufficient basis for his discharge for cause. Barisa's deliberate violation of CRF rules would, in itself, form an adequate basis for his dismissal. Among the fundamental duties of an employee is the obligation to obey reasonable rules, orders, and instructions of his employer. See 53 Am.Jur.2d, "Master and Servant", § 54; 3A Corbin on Contracts, § 679 (1960 rev. ed.). Barisa was in charge of the bidding procedure. The bar to his participating therein was to assure honest and fair bidding. This was reasonable.

Barisa has attempted to exempt himself from the usual effect of this rule by showing deviations from regulations by Mr. May and by a permissible latitude he

had in interpreting the regulations. Mr. Barisa knew why he was not to engage in the bidding procedure. He knew that he occupied a position of trust. The fact that Mr. May had changed a final bidding date [1] is not material. At any rate, Mr. May was the director. He was the only donor. In reality, it was his enterprise. Mr. May was not working for Barisa. Barisa, in reality, was working for May's project. A single, minor deviation from regulations, at the director's request, did not authorize general indifference to regulations by Barisa; neither did it act as a waiver of right by May to enforce regulations in the future.

 Even if there were no regulations concerning disposal of surplus property, Barisa's admitted attempts to deceive his employer constituted sufficient grounds for dismissal. An action of an employee, such as Barisa, showing dishonesty and untrustworthiness, whether the harm to the employer is great or small, will justify his dismissal for cause. See, generally, 53 Am.Jur.2d, "Master and Servant", § 49, and 3A Corbin on Contracts, § 680 (1960 Rev. Ed.).

 When Barisa was employed to handle administrative and financial matters for Charitable Research Foundation, his employer had every right to expect integrity in the performance of his duties. To require an employer to continue to employ an administrator after the discovery of clandestine arrangements and his admission of surreptitious conduct would be contrary to established principles of law, Tilden v. E. A. Stevenson and Co., Inc., 3 W.W. Harr. 151, 132 A. 739, 740, and morality. When an employer, because of an employee's wrongful conduct, can no longer place the necessary faith and trust in an employee, he is entitled to dismiss such employee without penalty. This is especially true where the employee has a responsible position where faith and trust are required.

 Barisa during trial tried to show that CRF was motivated by a desire to economize because of financial difficulties rather than by his misconduct when it terminated his employment. It is established, however, that when a sufficient ground for dismissal exists, the presence of other motives of the employer for the dismissal is immaterial. See, Allen v. Aylesworth, 58 N.J.Eq. 349, 44 A. 178, 179; McNamar v. Baltimore & Ohio Chicago Terminal R. Co., 153 F.Supp. 835, 839 (N.D.Ind., 1957), aff'd 254 F.2d 717 (7 Cir. 1958); Restatement of Contracts, § 278 (1932); Williston on Contracts, §§ 744, 839 (3rd ed. 1961). Since a ground for dismissal exists, the presence of other possible motives for dismissal will not be considered.

Judgment should have been directed for defendant at the trial. Accordingly, defendant's motion for judgment notwithstanding the verdict is granted.

It is so ordered.

---

1. At Mr. May's request, the final date for submission of bids was extended from a Friday to a Monday, to accommodate his secretary, who was out of town. Notice of this change was openly posted by Barisa for the information of all employees. There was no deception.