**Daniel H. HARRISON, Plaintiff,**

**v.**

**JACK ECKERD CORPORATION, a Florida corporation, Defendant.**

**Civ. No. 70–552.**

United States District Court, M. D. Florida, Tampa Division.

May 17, 1972.

Ned F. Sinder, Bentley, Miller, Sinder & Ellsworth, Lakeland, Fla., William M. Hicks, Colson & Hicks, Miami, Fla., for plaintiff.

Thomas C. MacDonald, Jr., Shackleford, Farrior, Stallings & Evans, Tampa, Fla., for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

HODGES, District Judge.

This action arises out of the involuntary termination of plaintiff Harrison's employment with the defendant, Jack Eckerd Corporation (Eckerd). Harrison seeks damages or specific performance of certain stock options which were not exercisable until a point in time after his employment had been terminated. Both parties have moved for summary judgment.

Harrison was employed by Eckerd for an indefinite term under an oral employment contract beginning in October, 1964. In 1967 he was promoted to Director of Personnel Training and Development, and in 1968 to Director of Security. He was subsequently transferred to Eckerd's wholly owned subsidiary, Gray Security Service, and assumed the position of Florida West Coast Division Manager.

In 1965, Eckerd adopted a stock option plan, and Harrison was granted separate options under the plan in 1965, 1966 and 1967. Harrison was then discharged in 1969, prior to the date upon which any

of the three options could be exercised. The reason assigned for such dismissal was an alleged violation of the company rule against fraternization with female employees. Harrison contends, however, based upon the existence of the stock options, that he was not subject to dismissal at the will of Eckerd, but only for just or legal cause. He further contends that the anti-fraternization rule did not exist in fact or was unreasonable or was discriminatorily applied. There are, in short, genuine issues of fact concerning the reasons underlying Harrison's dismissal, but those issues are material only if it is first determined that his employment contract was not terminable at will—a pure question of Florida law.

■ Both parties agree that an employment contract which sets forth no definite period of employment is terminable at the will of either party without cause and that no action for damages would lie. Hope v. National Airlines, 99 So.2d 244 (3rd D.C.A.Fla.1957); Russel & Axon v. Handshoe, 176 So.2d 909 (1st D.C.A.Fla.1965).

Harrison artfully argues, however, that the stock options constitute separate offers to enter into unilateral contracts, the consideration being his continued service as an employee. Thus, he concludes, Eckerd became burdened with a duty implied in law not to terminate his employment and thereby frustrate his acceptance of the options, absent just or legal cause for such action.

■ While it is superficially appealing, this approach will not withstand analysis in the light of the applicable Florida authorities. First, it is legally impossible to separate the options from the oral employment contract. They arose out of, and were made expressly dependent upon, a continuation of the employment relationship. Harrison concedes that he could have resigned at will, and there is nothing to indicate that the parties ever intended a definite term of employment or any other higher and different obligation on the part of Eck-

erd. In these circumstances, the Florida courts have uniformly held that the employment continues to be terminable at the will of either party and that the mere existence of a stock option or other inchoate employee benefit is insufficient, standing alone, to indicate an agreement upon or otherwise give birth to a different form of relationship. See, White v. Strange, 237 So.2d 16 (1st D.C.A.Fla. 1970) and Hoffman v. Robinson, 213 So.2d 267 (3rd D.C.A.Fla.1968), each involving stock options; and Sher v. Shower Door Company of America, Ltd., 197 So.2d 333 (3rd D.C.A.Fla.1967), involving a profit sharing agreement.

■ Secondly, even if the options are separately regarded as independent unilateral offers, it does not follow that they serve to alter the underlying employment relationship to the extent suggested by Harrison. At the most, the existence of the options would give rise to a duty of good faith on the part of Eckerd not to terminate the employment or otherwise frustrate the exercise of the options *for that purpose or reason*. This explains Gaines v. Monroe Calculating Machine Co., Inc., 78 N.J.Super, 168, 188 A.2d 179 (App.Div.N.J.1963), upon which Harrison principally relies. In that case the employee alleged that he was discharged in bad faith and for the purpose of depriving him of his option rights. In this instance, however, Harrison conceded at the hearing that he does not allege or claim that his dismissal was motivated by any bad purpose or intent on the part of Eckerd to avoid the options.

Having thus concluded as a matter of law that the employment relationship was terminable at will, exclusive of any claim of bad purpose to avoid the options, it becomes unnecessary to grapple with the secondary issues concerning the sufficiency of the reasons for Harrison's dismissal. There is no issue as to any "material" fact within the meaning of Rule 56. It follows, therefore, that the Defendant Eckerd is entitled to summary judgment.