**John T. HANEY, Plaintiff,**

**v.**

**Felix L. LAUB, Defendant.**

Superior Court of Delaware, New Castle.

Oct. 3, 1973.

James F. Kipp and Dennis D. Ferri, of Becker & Kipp, Wilmington, for plaintiff.

Howard M. Handelman, of Bayard, Brill & Handelman, Wilmington, for defendant.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BIFFERATO, Judge.

John T. Haney, plaintiff, filed a complaint against Felix L. Laub, defendant, alleging that Laub has violated the terms of a Stock Option Agreement. The complaint was brought under 10 Del.C. § 6501 for declaratory relief, seeking a judgment declaring and adjudicating the respective rights and duties of Haney and Laub under the written Stock Option Agreement executed in February, 1968.

Two issues are before the Court on this motion by Laub for summary judgment. First, could Haney be discharged from his position as manager of Crichton Beverages, Inc. (Crichton) without cause? Second, if Haney could be discharged for cause only, do the uncontroverted facts establish "just cause" as a matter of law? Laub's motion should be granted if either issue is resolved in the affirmative.

In considering the first issue, it is clear that Haney was employed by Crichton in 1964 under an oral agreement of employment for an indeterminate term. All of the shares of common stock of Crichton were owned by Laub. Laub, in 1968, presented Haney with a Stock Option Agreement for the purchase of Laub's stock in Crichton upon Laub's death at a price of 10% below its then fair market value in consideration for Haney's continued employment with Crichton. One of the conditions of the Agreement is that Haney be employed by Crichton at the time of Laub's death. The Agreement also provided that any interest or rights of Haney in the stock option could not be assigned and would terminate if he dies before Laub or is discharged for cause by Crichton, but the Agreement would otherwise bind the parties. This Agreement was accepted by Haney. Haney was discharged October 12, 1971.

■ The law governing oral contracts of employment for an indeterminate term is well settled. A hiring for an indeterminate period is a hiring at will and, consequently, is terminable at the will of either party with or without cause. Drake v. Hercules Powder Co., Del.Super., 5 Terry 69, 44 Del. 69, 55 A.2d 630 (1946); Greer v. Arlington Mills Mfg. Co., Del.Super., 1 Pennewill 581, 43 A. 609 (1899).

■ The crucial question here is what, if any, effect the subsequent 1968 Stock Option Agreement has on defendant's right to terminate the plaintiff's employment without cause. Undoubtedly, a hiring for an indefinite period, which is ordinarily terminable at will, may be modified by a subsequent contractual restriction upon the right of discharge. 53 Am.Jur.2d § 43. Plaintiff's position here is that the Stock Option Agreement modified his employment status to the point where he could no longer be discharged without cause.

■ There is no doubt that the Stock Option Agreement involved created enforceable rights between the parties. Undeniably, there must be consideration for the granting of a stock option. Gottlieb v. Heyden Chemical Corp., Del.Supr., 33 Del. Ch. 82, 90 A.2d 660, 664 (1952). Here, the stated consideration was "Haney's continued employment with Crichton."[1] The retention of an employee's services represents sufficiently adequate consideration to validate a Stock Option Agreement so long as there exist other circumstances which insure that the contemplated consideration will in fact pass to the corporation. Kerbs v. California Eastern Airways, Del.Supr., 33 Del.Ch. 69, 90 A.2d 652, 656 (1952). In Beard v. Elster, Del.Supr., 39 Del.Ch. 153, 160 A.2d 731 (1960), the provision in a Stock Option Agreement that the option could be exercised only while the optionee remained an employee of the Corporation was held to furnish the Corporation adequate assurance of receiving the contemplated consideration, i. e., the optionee's continued employment. See, also, Hoffman v. Dann, Del.Ch., 205 A.2d 343, 349, cert. denied 380 U.S. 973, 85 S.Ct. 1332, 14 L.Ed.2d 269 (1965). By agreement, the stock options in question were exercisable only if plaintiff was employed by Crichton at the time certain pertinent events occurred.[2]

What effect did the Stock Option Agreement have on the employment status of the plaintiff? Without question, the plaintiff was subject to discharge with or without cause by the defendant in the absence of the Stock Option Agreement. Paragraph 11 of the Agreement, however, provides that:

> "[T]his Agreement is personal to Haney and his right and interest therein is not assignable and *shall automatically terminate if he dies before Laub or is discharged for cause by Crichton, but otherwise this Agreement shall bind the parties hereto and their heirs and* assigns." [emphasis added]

The Stock Option Agreement construed in its entirety makes it reasonably clear that the stock options "are in consideration of and made expressly conditioned upon Crichton employing Haney," and that the Agreement will only terminate if (1) plaintiff predeceases the defendant or (2) plaintiff is *discharged for cause* by Crichton. Section 11 makes it clear that, absent the happening of either of these two events, the Agreement "shall bind the parties hereto." Of course, plaintiff could forfeit his rights under the Agreement by leaving the employ of Crichton on his own accord. In this sense, the Agreement may be viewed as a unilateral contract between plaintiff and defendant, with the consideration being plaintiff's continued service as an employee. In fact, plaintiff did continue in the service of Crichton for several years before his dismissal by the defendant.

1. Agreement, p. 1.

2. Agreement, p. 6, paragraph 9.

The defendant relies substantially on Harrison v. Jack Eckerd Corporation, 342 F.Supp. 348 (Md.Fla.1972), a recent Florida district court decision. In *Harrison*, the plaintiff's employment was involuntarily terminated by the defendant corporation, and the plaintiff sought damages or specific performance of certain stock options which were not capable of being exercised until a point in time after he had been discharged. The plaintiff was employed by the defendant under an oral employment contract for an indefinite term beginning in October of 1964. In 1965, the defendant corporation adopted a stock option plan and the plaintiff was granted separate options in 1965, 1966 and 1967. Harrison was discharged in 1969 before any of the options could be exercised. He contended that, "based upon the existence of the stock options, . . . he was not subject to dismissal at the will of Eckerd, but only for just or legal cause." Harrison v. Jack Eckerd Corporation, supra, 342 F.Supp. at 350.

Rejecting Harrison's contention that the stock options constituted unilateral contracts which had the effect of burdening the defendant corporation with a duty implied in law not to terminate Harrison's employment absent cause, the district court said:

"While it is superficially appealing, this approach will not withstand analysis in the light of applicable Florida authorities. First, it is legally impossible to separate the options from the oral employment contract. They arose out of, and were made expressly dependent upon, a continuation of the employment relationship. Harrison concedes that he could have resigned at will, and there is nothing to indicate that the parties ever intended a definite term of employment or any other higher and different obligation in the part of Eckerd. In these circumstances, the Florida courts have uni-

formly held that *the employment continues to be terminable at the will of either party and that the mere existence of a stock option or other inchoate employee benefit is insufficient, standing alone, to indicate an agreement upon or otherwise give birth to a different form of relationship* . . .

"Secondly, even if the options are separately regarded as independent unilateral offers, it does not follow that they serve to alter the underlying employment relationship to the extent suggested by Harrison. At the most, the existence of the options would give rise to a duty of good faith on the part of Eckerd not to terminate the employment or otherwise frustrate the exercise of the options for that purpose or reason." Harrison v. Jack Eckerd Corporation, supra, 342 F. Supp. at 350.

Harrison is distinguishable from the present facts. The district court in *Harrison* attached considerable importance to the fact that there was "nothing to indicate that the parties ever intended a definite term of employment or any other higher and different obligation on the part of Eckerd." Unfortunately, the Stock Option Agreement involved in *Harrison* was not set out. Nevertheless, the only reasonable inference from the language of the court is that the Agreement in question there was predicated only upon Harrison's continued employment, and made no mention of any restriction on Eckerd's absolute right to terminate Harrison's employment at will, without cause. In the present case, the Agreement makes it clear that plaintiff's right to the stock options could only be defeated if he were discharged for cause [or if he predeceased defendant]. Moreover, the intendment of the Agreement is that plaintiff's continued employment would be assured and that such employment should continue until the death of the defendant.[3] In this sense, the Stock

---

3. The Agreement provides that "Laub desires to allow Haney to purchase all of Laub's shares of stock in the event of his death . . . " or "[i]n the event Laub intends to sell any portion of the stock of Crichton during his lifetime . . . ." Agreement, pp. 1, 5.

Option Agreement alters the former indefinite hiring of plaintiff to a hiring for a definite term.

■■ The essence of *Harrison* is that the mere existence of stock options, standing alone, do not alter the employment relationship between the parties. A stock option, in and of itself, only engenders a duty of the employer to deal in good faith, i. e., refrain from directly frustrating the exercise of the option. Harrison v. Jack Eckerd Corporation, supra, 342 F.Supp. at 350. See, also, Zimmer v. Wells Management Corporation, 348 F.Supp. 540 (D.N.Y.1972). In the instant case, however, there is something more than the mere existence of a stock option. The Agreement, instead, represents an enforceable unilateral contract granting to plaintiff certain stock option rights which are made contingent upon the plaintiff's continued employment, and are terminable only upon plaintiff's dismissal for cause. In short, Section 11 of the Agreement effectively limits the defendant's otherwise absolute right to discharge plaintiff at will, without cause.

Moreover, any other interpretation of the Agreement defies logic and common sense. Surely, this otherwise enforceable Stock Option Agreement would be rendered nugatory and illusory, *ab initio,* if plaintiff could, after the execution of the Agreement, be discharged at the defendant's whim. Since the Agreement expressly provides that plaintiff's option rights are defeatable only upon his discharge for cause [or if plaintiff predeceases defendant] it is manifestly inconsistent to say that plaintiff's employment constituted a hiring at will after the execution of the Agreement. Compare Jorgensen v. Pennsylvania R.R. Co., 25 N.J. 541, 138 A.2d 24, 32 (1958); Finnegan v. Penna. R.R. Co., 76 N.J.Super. 71, 183 A.2d 779, 785 (1962). The employment status and the option rights are indivisible terms in the type of Agreement herein in question. The defendant could have, but did not, reserve his right to dismiss plaintiff without cause in

the Agreement. The Agreement, therefore, serves to modify the plaintiff's previous employment status to this extent: plaintiff, after the execution of the Agreement, was dischargeable for cause only, for as long as he continued in the employ of Crichton.

The second issue must therefore be resolved. Do the uncontroverted facts establish as a matter of law that plaintiff was discharged for just cause?

■ No doubt, misconduct, which is inconsistent with the relation of employer and employee, will justify the former in terminating the relationship. Tilden v. E. A. Stevenson & Co., Del.Super., 3 W.W. Harr. 151, 33 Del. 151, 132 A. 739, 740 (1926). And the actions of an employee showing dishonesty and untrustworthiness, whether the harm to the employer is great or small, will justify dismissal for cause. Barisa v. Charitable Research Foundation, Inc., Del.Super., 287 A.2d 679, 682, aff'd Del.Supr., 299 A.2d 430 (1972); Tilden v. E. A. Stevenson & Co., supra, 132 A. at 740. However, where the evidence is conflicting as to the existence of a ground for discharge, the rightfulness of the discharge is a question of fact. 53 Am.Jur.2d § 45. Otherwise stated:

> "Where . . . the evidence presents a conflict as to the existence of the ground alleged in justification of the discharge of a servant or is susceptible of more than one interpretation with respect thereto, the rightfulness of the discharge is a question for the jury." 53 Am.Jur.2d § 70.

■ Defendant argues that plaintiff charged personal expenses to the business without the defendant's knowledge or authorization. Plaintiff, on the other hand, argues that his dismissal was due solely to a personality conflict with the defendant, and that he was authorized to write checks for Crichton's business operations, and that the so-called "personal expenses" were really "good-will" expenses of the business.

There are conflicts over such material facts as the scope of plaintiff's authority to issue checks and to receive loans from the company. There is disagreement over whether or not the plaintiff could issue checks for "good-will expenses" and whether the checks in question were issued for plaintiff's personal expenses or issued to promote the good will of Crichton. There is also an essential unresolved issue as to whether or not plaintiff's actions, alleged by defendant to establish just cause for dismissal, were legitimized by defendant's acquiescence or impliedly authorized through a course of conduct.

All of these factual issues have bearing on the grounds for plaintiff's dismissal. The testimony of the parties regarding these issues presents a factual question on the rightfulness of that dismissal.

Defendant's motion for summary judgment is denied.

It is so ordered.