Nettie M. Lutz and Managed Funds, Inc.,
Plaintiffs,

*vs.*

Lloyd E. Boas, J. John Brouk, Robert A. Hicks, James J. Mullen, Jr., Jefferson J. Rebstock, Dr. Earl Rice, W. Munro Roberts, Jr., Hilton H. Slayton and Hovey E. Slayton, Leo Model, Rolf R. Roland, Frits Markus, Robert R. Rosenberg, Walter H. Berton, Walter S. Morris, Erwin Wolff, Herman H. Stone, Stephen M. Jaquith, Elliot D. Fox, Jr., and Frank L. Thompson, individually and as partners doing business under the firm, name and style of Model, Roland & Stone, James S. Stubbs and Harold W. Smith, and Slayton Associates, Inc.,
Defendants.

*New Castle, November 10, 1961.*

*Richard L. McMahon,* of Berl, Potter & Anderson, Wilmington, and *R. Walston Chubb, Robert S. Allen, Dominic Troiani,* of Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for plaintiff, Managed Funds, Inc.

*William E. Taylor, Jr.,* Wilmington and *Abraham L. Pomerantz* and *Jerome T. Orans,* of Pomerantz, Levy & Haudek, New York City, for plaintiff, Nettie M. Lutz.

*Hilton Slayton, Hovey Slayton* and *Slayton Associates,* St. Louis, Mo., *pro se.*

*Robert H. Richards, Jr.,* of Richards, Layton & Finger, Wilmington, and *Arthur H. Dean* and *Marvin Schwartz,* of Sullivan & Cromwell, New York City, for defendants, Model, Roland & Stone, Leo Model, Rolf R. Roland, Frits Markus, Robert Rosenberg, Walter H. Berton, Walter S. Morris, Erwin Wolff and Herman H. Stone.

*John Van Brunt, Jr.,* and *E. Dickinson Griffenberg, Jr.,* of Killoran & VanBrunt, Wilmington, for defendant, Dr. Earl Rice.

Defendant, Jefferson J. Rebstock, did not appear; jurisdiction limited to stock seized.

The other defendants were not subject to this court's jurisdiction.

SEITZ, Chancellor: This is my decision based on developments subsequent to my opinion of May 25, 1961 in *Lutz v. Boas,* 39 *Del.Ch.* 585, 171 *A.2d* 381. It will be necessary to read that opinion in order to understand the present one. I held Model liable for its profits on Funds' brokerage commissions because it violated the *Investment Company Act of* 1940, 15 *U.S.C.A.* § 80a-1 *et seq.* The amount of such liability has since been ascertained to be $841,335.47. I also held, under general equitable principles, that Model had a liability in connection with the management fees paid by Funds to Associates. However, I concluded that it was not equitable to require Model to repay all the profits on its brokerage commissions to Funds and in addition pay the total of the improperly paid management fees. I concluded that as to the management fees ($1,129,451.49) Model should only pay the difference between the amount of the profits and the total management fees.

As I stated in my prior opinion, "My approach will, in effect, result in Funds having received back all payments improperly made to Associates and having obtained investment advice and brokerage service for the standard brokerage charges, or less. This would seem to do equity under the facts." I went on to hold the non-affiliated directors, *inter alia,* jointly and severally liable with the other appearing defendants for all the management fees.

Before the entry of judgment on the court's opinion, the attorney for the one appearing non-affiliated director ("Dr. Rice") filed a peti-

tion seeking a determination with respect to his rights of indemnification and contribution from Model. While this and other open matters were being processed, the court was advised that Model had, subject to court approval, agreed to settle all of its liability to Funds for a payment of $950,000. Model and Funds have also agreed that to the extent possible, the settlement money should first be applied to Model's individual liability for profits and the balance applied against its joint liability for management fees. Counsel for the nonaffiliated director claims that if the settlement is approved and the action dismissed as to Model, it will prejudice Dr. Rice unless his rights as against Model are also determined or preserved. The parties have now agreed that the pleadings are in a stage which makes it appropriate to declare the rights of Funds against the defendants and also the rights as between the defendants, Dr. Rice and Model. I shall proceed to do so.

Dr. Rice contends that the court in effect has found him and Model jointly and severally liable for a sum representing the total management fees of $1,129,451.49. He then argues that Model actually profited to the extent of $841,335.47, on the basis of the brokerage business. He concludes that as between himself and Model the principle of indemnification should apply with respect to the profit figure with the consequence that he should receive that sum from Model to cover that amount of his total liability to Funds. As to the balance of his liability Dr. Rice says the principle of contribution should govern as between him and Model. Funds and Model claim that this is not a proper case for the application of indemnification principles. Funds says there can be contribution only as to the joint liability while Model says there can be none at all under what it claims is the controlling New York law.

It is obvious that the basic difficulty here arises from the court's treatment in its prior opinion of Model's liability to Funds for the profits and management fees. The court's approach made Model solely liable for the brokerage profits and jointly liable with Dr. Rice for the management fees in excess of such profits. However, it made Dr. Rice responsible for all the management fees. The court's equitable approach with respect to Model's liability resulted

in limiting its aggregate liability for these items to a sum equal to the management fees. In contrast, Funds has claimed and still claims that the liability of the nonaffiliated director should be for the total amount of the management fees without any credit for the brokerage profits item, and thus Dr. Rice would be entitled to contribution from Model only to the extent of one-half of Model's liability for management fees.

Assuming no settlement between Funds and Model, the judgment in favor of Funds and against Dr. Rice will have to include the full amount of the management fees. On the same assumption, the judgment against Model will come to the same amount. The problem arises because the court first considered Model's liability with respect to the violation of the Investment Company Act and then treated its liability with respect to the management fees. It is clear that this was a fortuitous approach because the court could well have first considered the Model liability for management fees. Had it done so it would have found Model jointly liable with Dr. Rice for the total management fees. Had it then considered Model's individual liability for violation of the Investment Company Act it would have found a violation but presumably adopted the same equitable approach concerning its aggregate liability. Thus, the court must decide whether, as Funds contends, it intended to permit Funds to recover the total profits from Model and in addition recover the total management fees from Dr. Rice with a joint liability in Model to the extent of the difference between its profits and the total management fees.

Funds claims that unless the court treats the item of liability for brokerage profits as being Model's individual liability and thus does not permit Dr. Rice to have a "credit" to that extent, it will not implement its decision with respect to the violation of the Act. The court cannot agree. Assuming no settlement, the acceptance of Funds' argument would, theoretically at least, permit the recovery by Funds of the total management fees plus the brokerage profits. I determined in the prior opinion that Model's total liability in both categories should not exceed, in effect, the total liability for management fees. Thus, to permit the approach suggested by Funds would

result in Funds receiving back Model's profits arising from a violation of the Act and also recovering the total management fees. However, this would then go beyond what I deem equitable because it would mean that Funds was provided with investment advice free and brokerage services for substantially less than the standard brokerage charges. This would seem to be an excessive liability to impose even against these wrongdoers.

■ I conclude that Funds' recovery from the parties, insofar as the management fees and brokerage profits are concerned, was intended to be limited to a sum equivalent to the management fees, they being greater than the brokerage profits. This is important because it must next be decided whether Dr. Rice is entitled to indemnification from Model with respect to the brokerage profits and whether he is entitled to contribution on all or only a portion of the management fee liability.

■ Turning first to Dr. Rice's claim that he is entitled to indemnification to the extent of Model's profits on brokerage business, it is difficult to see how that doctrine can apply because it assumes a liability for the sum involved on the part of the person seeking to be indemnified. There has been no claim or finding that Dr. Rice is liable for any of the brokerage profits for which Model was held responsible. Its liability was based on a violation of the Investment Company Act of 1940. Moreover, the doctrine of indemnification would seem to require some finding that Model's wrongful conduct was much greater than that of Dr. Rice. In view of the nature of Model's violation of the Act, it is difficult to see how the court could make such a comparison.

I conclude that the doctrine of indemnification has no application to this case.

I next consider the question of Dr. Rice's right to contribution against Model.

■ As heretofore stated, Funds claims that to the extent of the brokerage profits there can be no contribution claim by Dr. Rice because Model's liability therefor is not joint. It is true that I treated

the brokerage profits issue as creating an individual liability in Model. However, for reasons heretofore discussed, I am satisfied that equitable principles dictate that Dr. Rice's right to contribution from Model should apply to Model's liability for profits and management fees. This conclusion cannot prejudice Model because its aggregate liability will be the same, at least if the settlement is approved. The conclusion also implements my determination that Funds should not in justice receive both the management fees and brokerage profits from defendants. At the same time it will be fair to Dr. Rice because it will eliminate what would otherwise be a substantial limitation on his right to contribution because of the mere "happenstance" that the court determined the issue of the brokerage profits before determining Model's management fee liability. It follows that, insofar as Dr. Rice's right to contribution is concerned, I cannot recognize the agreement of Funds and Model to first apply the settlement money to Model's individual liability.

The next issue is the effect the approval of the Model settlement will have on the judgment to be entered against Dr. Rice and what contribution rights, if any, will Dr. Rice have as against Model.

Model claims that the New York law governs these issues because the activities for which Model was held liable occurred in New York. This is important because it seems clear that the New York contribution statute has no application to claims of the types here involved. Both Funds and Dr. Rice claim that the tortfeasor contribution statutes are procedural and that the Delaware law should therefore apply.

Regardless of the place where the wrongs occurred for which Dr. Rice and Model are liable, does the application of the doctrine of contribution involve substantive law in contract to procedural or remedial law? The New York Court of Appeals in the case of *Deuscher v. Cammerano,* 256 *N.Y.* 328, 176 *N.E.* 412, has concluded that the New York contribution statute is remedial (§ 211-a, N.Y. Civil Practice Act). The Supreme Court of Delaware in the case of *Halifax Chick Express, Inc. v. Young,* 11 *Terry* 596, 50 *Del.* 596, 137 *A.2d* 743, has also determined that our contribution

statute is remedial. It is well established that the law of the forum governs questions of remedial or procedural law. *Skillman v. Conner,* 8 *W.W.Harr.* 402, 193 *A.* 563; *Connell v. Delaware Aircraft Industries,* 5 *Terry* 86, 55 *A.2d* 637; 1 *Beale, Conflict of Laws,* § 8A.28. It follows that this court must apply its own contribution statute (10 *Del.C.* § 6301 *et seq.*) in determining the rights of Funds as against Dr. Rice and Model and in determining the rights as between Dr. Rice and Model. I might add that the parties tacitly agree that the Delaware statute is applicable to this type of litigation assuming, as I have decided, that the Delaware Law controls.

I next consider Dr. Rice's contention that in determining his contribution rights as against Model, the several Model partners should be treated as separate entities. Model on the other hand claims that the partnership should be treated as a single entity as against Dr. Rice. Both parties agree that the matter is one calling for the exercise of equitable principles of fairness and reasonableness. See *Wold v. Grozalsky,* 277 *N.Y.* 364, 14 *N.E.2d* 437, 122 *A.L.R.* 518; *Marymount College v. John J. Abramsen Co., Inc.,* 6 *Misc.2d* 836, 161 *N.Y.S.2d* 920; Parker, To Use of *Bunting v. Rodgers,* 125 *Pa.Super.* 48, 189 *A.* 693.

I think it fair that Model be considered as a single entity for purposes of considering Dr. Rice's right to contribution. I say this because the wrongs for which Model was held liable were wrongs committed by the partnership entity. Thus, it was the partnership which handled Funds' brokerage business and which failed to obtain approval of its advisory agreement. As to the management fees and excessive trading, it is evident that many of the partners had no particular knowledge of the crucial facts. They were passive actors. The Model partnership will be treated as a single entity for purposes of fixing the rights of the parties.

I next consider Dr. Rice's claim that as to the excessive trading liability, his rights to contribution should be based on the same liability as Model's.

The court determined that Dr. Rice was liable for the total loss on the so-called excessive trading item ($88,546.30). The court also

decided that Model was liable for these losses but because it had deprived Model of its profits on these transactions as part of its ruling on the violation of the Investment Company Act the court concluded that the profit item should first be deducted from the total loss in arriving at Model's liability. Dr. Rice claims that his right to contribution from Model applies to the full $88,546.30 while Funds and Model claim that his right to contribution is limited to the $74,298.47 liability of Model.

I find it unnecessary to decide this point now because, as hereinafter appears, whichever figure is used, Dr. Rice will not be entitled to contribution from Model if the settlement is approved.

In view of my legal determinations, what are the monetary responsibilities of the parties? Assuming that the Model settlement is approved, the judgment to be entered for Funds against Dr. Rice must be reduced by the amount of the settlement. It is so provided in 10 *Del.C.* § 6304(a). Thus, Dr. Rice's total liability for the management fees in the sum of $1,129,451.49 plus his liability for losses due to excessive turnover in the sum of $88,546.30 must be reduced by the sum of $950,000. The judgment to be entered against Dr. Rice in favor of Funds will thus be in the sum of $267,997.79.

If the Model settlement is approved, no judgment will be entered against Model in favor of Funds. Under these circumstances will Dr. Rice be entitled to any right of contribution from Model as to the $267,997.79? The situation is covered by § 6304(b), assuming that the release to Funds from Model contains the appropriate provisions. It provides:

> "(b) A release by the injured person of one joint tortfeasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tortfeasor, of the injured person's damages recoverable against all the other tortfeasors."

As I see it, the $950,000 payment by Model will, with the release, be sufficient under the statute to prevent any right of contribution arising in Dr. Rice's favor as against Model even if he pays the entire judgment against him. I say this because the parties agree that their fault is equal and therefore I do not have any issue of disproportionate liability to resolve. Parenthetically, the lack of financial responsibility on the part of the Slaytons and Associates seems to be conceded. It follows that if the settlement is approved and the appropriate release given, the judgment will include a determination that Dr. Rice is not entitled to contribution from Model.

The findings in this opinion were orally announced to counsel at the hearing on the approval of the Model settlement so that they could consider them in connection therewith. No objection to the settlement was made and it was approved by the court.

Present order on notice.